126 F.3d 43
 38 Collier Bankr.Cas.2d 1397, 31 Bankr.Ct.Dec. 554,
Bankr. L. Rep. P 77,523
 In re Brian K. BOODROW, Debtor.
CAPITAL COMMUNICATIONS FEDERAL CREDIT UNION, Plaintiff-Appellant,
v.
Brian K. BOODROW, Defendant-Appellee.
 No. 1042, Docket 96-5078.
 United States Court of Appeals,
Second Circuit.
 Argued March 21, 1997.
Last Supplemental Brief Received June 25, 1997.
Decided Sept. 12, 1997.
 
 Douglas M. Fisher, Albany, NY (Solomon and Solomon, P.C., of Counsel), for Plaintiff-Appellant.
 William M. McCarthy, Albany, NY (McCarthy & Evanick, of Counsel), for Defendant-Appellee.
 Rudolph J. Meola, Richard J. Miller & Associates, P.C., Key Bank of New York, Albany, NY, Amicus Curiae for Key Bank of New York.
 Kenneth R. Hiller, Law Office of Jeffrey M. Freedman, Buffalo, NY; John Rao, National Consumer Law Center, Boston, MA, Amicus Curiae for National Association of Consumer Bankruptcy Attorneys.
 Before: FEINBERG and PARKER, Circuit Judges, and SHADUR,* District Judge.
 FEINBERG, Circuit Judge:
 
 
 1
 This case presents an issue of first impression in this circuit: whether a bankruptcy court may allow a debtor, who files for bankruptcy and is "current" on a car-purchase loan, to retain the collateral securing the loan and continue making monthly payments under the original loan agreement. Creditor Capital Communications Federal Credit Union (Capital) moved in the United States Bankruptcy Court for the Northern District of New York for, among other things, relief from the automatic stay imposed by 11 U.S.C. § 362 when debtor Brian K. Boodrow filed for bankruptcy under Chapter 7 of the Bankruptcy Code. In December 1995, Bankruptcy Judge Littlefield, Jr. denied that motion. In re Brian Boodrow, 192 B.R. 57 (Bankr.N.D.N.Y.1995). In June 1996, the United States District Court for the Northern District of New York, Thomas J. McAvoy, C.J., affirmed the decision of the bankruptcy court. Capital Communications Federal Credit Union v. Boodrow (In re Boodrow), 197 B.R. 409 (N.D.N.Y.1996). Capital appeals from that ruling; for reasons stated below, we affirm.
 
 I. Facts and Prior Proceedings
 
 2
 The material facts in this case are not in dispute. In May 1995, Boodrow filed for relief pursuant to Chapter 7. Prior to filing, Boodrow had borrowed $15,900 from Capital to purchase a 1992 Pontiac Grand Am. As of the petition date, Boodrow owed Capital $8,820, which sum was secured by a first priority lien on the vehicle. Capital agrees that the market value of the vehicle on that date was $9,650.
 
 
 3
 After filing his Chapter 7 petition, Boodrow filed a statement of intention pursuant to 11 U.S.C. § 521(2),[1] indicating that he intended to retain the vehicle and reaffirm his debt to Capital. However, Boodrow, who had been receiving workmen's compensation and disability payments for an injury, discovered sometime thereafter that he was permanently disabled and would not be able to return to full-time employment. For this reason, Boodrow says, he did not execute a reaffirmation agreement with Capital but rather retained the car, remained "current" on his monthly installment payments and maintained adequate insurance on the car. Apparently, as part of the loan contract with Capital, Boodrow had purchased disability insurance, which was the source of the monthly payments due under the loan. Indeed, it is undisputed that at all times up to the argument of this case before us, Boodrow has remained current on his payments and maintained adequate insurance for the vehicle.
 
 
 4
 In July 1995, Capital moved to lift the automatic stay and for other relief on the ground that Boodrow had not complied with § 521(2), and that this failure constituted cause under 11 U.S.C. § 362(d)(1) for lifting the stay to enable Capital to recover the vehicle. Capital maintained that Boodrow was required under § 521(2) to either enter into a reaffirmation agreement, surrender the vehicle to Capital, or redeem it by immediately paying Capital the market value of the vehicle.
 
 
 5
 Bankruptcy Judge Littlefield conducted a hearing on Capital's motion in August 1995 and reserved decision. See 192 B.R. at 58. In September, he granted Boodrow a discharge from bankruptcy. Thereafter in December, Judge Littlefield denied Capital's motion for relief from the automatic stay. The court held that Capital had not demonstrated cause for lifting the stay because § 521(2) allowed a debtor in Boodrow's position to retain the collateral and continue making monthly payments. 192 B.R. at 59. The court concluded that Capital had not demonstrated that it would suffer harm if the stay was not lifted. Id. at 60.
 
 
 6
 Capital appealed to the district court, and Chief Judge McAvoy affirmed the bankruptcy court in an opinion filed in June 1996. The judge held that § 521(2) allowed Boodrow to retain the collateral and continue to perform under the original loan agreement, and therefore the bankruptcy court had properly denied Capital's motion. This appeal followed.
 
 II. Discussion
 A. Mootness
 
 7
 We turn to the issue of mootness because our dissenting colleague takes the position that this case became moot when the bankruptcy court granted Boodrow a discharge from bankruptcy on September 5, 1995--a few months before it issued its opinion denying Capital relief from the automatic stay. Neither party raised the issue of mootness at any stage of the case, but we asked for and received supplemental briefing on that issue. After reviewing those briefs, we agree with Boodrow, Capital and amicus curiae Key Bank of New York (Key Bank) that the case is not moot.[2]
 
 
 8
 It is clear that under Article III of the Constitution, we lack jurisdiction over a case "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam) (internal quotations and citations omitted); South Street Seaport Ltd. Partnership v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 759 (2d Cir.1996). The Supreme Court has instructed that a case becomes moot only when it is "impossible for the court to grant 'any effectual relief whatever' to a prevailing party." Church of Scientology of Cal. v. United States, 506 U.S. 9, 12, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992) (citing Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895)) (emphasis added); see also Fox v. Board of Trustees of the State Univ. of N.Y., 42 F.3d 135, 140 (2d Cir.1994) (case moot when "it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury").
 
 
 9
 Judge Shadur argues in his dissent that the automatic stay, which protects a debtor's assets during the administration of a bankruptcy case, see 11 U.S.C. § 362(a), terminated completely as a matter of law when Boodrow received his discharge. With regard to Capital's right to try to reclaim the vehicle, this seems questionable. The bankruptcy judge, who obviously knew that he had granted Boodrow a discharge three months earlier, noted in denying Capital's motion that "the stay (as it applies to property of the estate) terminates by operation of law upon the closing of the Chapter 7 case or sooner if the property is affirmatively abandoned by the trustee." 192 B.R. at 60 (emphasis added). Indeed, 11 U.S.C. § 362(c)(1) states that "the stay of an act against property of the estate ... continues until such property is no longer property of the estate," not merely until discharge. Id.; see Collier on Bankruptcy, p 362.06 at 362-72 (Lawrence P. King ed., 15th ed. rev.1996) (property is no longer part of the estate if sold, abandoned, exempted, or a reorganization plan confirmed). Boodrow's supplemental brief states that the trustee in this case did not "formally abandon any potential interest" in the vehicle. We have no information to indicate that Boodrow's bankruptcy case is closed, despite his discharge. See Collier p 350.01 at 350-2 (case is closed after the estate is fully administered and the trustee is discharged). It thus seems that Boodrow's discharge did not completely terminate the stay.
 
 
 10
 In any event, even if the automatic stay did terminate completely with respect to Boodrow's vehicle upon his discharge, it seems clear that Capital did not seek to lift the automatic stay as an end in itself. Rather, Capital essentially sought to recover Boodrow's vehicle or an equivalent sum. In its motion papers, Capital argued that the automatic stay should be lifted "to allow [it] to recover the vehicle" because Boodrow had not, pursuant to § 521(2), redeemed or surrendered the vehicle or entered into a reaffirmation agreement. Capital maintained that "[a]bsent a reaffirmation, the entire balance [outstanding on the loan] is due immediately. The Court by allowing continuation of monthly payments is forcing a quasi-reaffirmation upon the creditor." Finally, Capital asked for "such other and further relief as the Court deems just and proper." Capital filed the motion to prevent Boodrow from simply retaining the vehicle and continuing to make monthly payments. Indeed, Capital did and still does argue that § 521(2) prohibits such action barring reaffirmation of the loan.
 
 
 11
 By granting a discharge while Boodrow was still in possession of the car, the bankruptcy court in effect continued the harm of which Capital had already complained. At present, Boodrow retains possession of the vehicle and is making monthly payments to Capital, the very injury that Capital attempted to redress in its motion. See New England Health Care Employees Union v. Mount Sinai Hosp., 65 F.3d 1024, 1029 (2d Cir.1995) (challenge to repealed legislation not moot because "collateral" injury suffered while legislation was in effect could be redressed); Michel v. Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.), 44 F.3d 1310, 1316 (6th Cir.1995) (case not moot when "collateral consequences" of court order create a live dispute).
 
 
 12
 We believe that we could grant Capital effective relief if we agreed with its interpretation of § 521(2). On that assumption, Boodrow was--and still is--violating that section because he has never signed a reaffirmation agreement or redeemed or surrendered the vehicle. If we reversed the lower courts, we could remand to the bankruptcy court with orders to either compel Boodrow to make an appropriate election under § 521(2) or perhaps amend his discharge. Capital could then receive practical relief in the form of either an immediate payment representing the total outstanding amount on the loan, return of the vehicle or a new arrangement restoring Boodrow's personal liability if he were to default on the loan. This is the essential relief Capital sought when it made its motion in the bankruptcy court. See In re Burger Boys, 94 F.3d at 760 (case not moot when court can provide practical relief sought by injured party). We thus conclude that the case is not moot and turn to the merits of the appeal.
 
 B. The Merits
 
 13
 A bankruptcy court has discretion in determining whether to lift the automatic stay. Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir.1990). We thus review the bankruptcy court's denial of Capital's motion for abuse of discretion. See id. We review de novo the question of the proper interpretation of § 521(2). See General Motors Acceptance Corp. v. Valenti (In re Valenti), 105 F.3d 55, 59 (2d Cir.1997).
 
 
 14
 Capital argues that "cause" existed pursuant to 11 U.S.C. § 362(d)(1)[3] for lifting the automatic stay. We have described the automatic stay as a "crucial provision of bankruptcy law" intended to "prevent[ ] disparate actions against debtors ... [and] ensur[e] that no creditor receives more than an equitable share of the bankrupt's estate." Lincoln Savings Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Assoc., Inc.), 880 F.2d 1540, 1545 (2d Cir.1989) (internal citations omitted). Although a bankruptcy court has discretion to lift the stay in various situations, the "most common basis for granting relief for cause," and the one most applicable here, is a lack of adequate protection of a party's interest in property. Collier, p 362.07[a] at 362-77 to 362-78. We have emphasized that a bankruptcy court should deny relief from the stay if the movant "fails to make an initial showing of cause." In re Sonnax Indus., Inc., 907 F.2d at 1285.
 
 
 15
 Capital argues primarily that it did show cause to lift the stay because Boodrow violated § 521(2) by not electing to reaffirm the debt or surrender or redeem[4] the vehicle. In other words, Boodrow could not simply retain the vehicle and continue to make monthly payments. Courts in several circuits have taken the position that § 521(2) confines a debtor to the options specifically listed in that section. E.g, In re Edwards, 901 F.2d 1383, 1387 (7th Cir.1990); Taylor v. AGE Federal Credit Union (In re Taylor), 3 F.3d 1512, 1517 (11th Cir.1993); Johnson v. Sun Finance Co. (In re Johnson), 89 F.3d 249, 252 (5th Cir.1996); cf. General Motors Acceptance Corp. v. Bell (In re Bell), 700 F.2d 1053, 1058 (6th Cir.1983) (case decided before § 521(2) added to Code).
 
 
 16
 Boodrow responds that no cause existed to modify the stay because he complied with § 521(2) by indicating to Capital that he would retain the vehicle and continue making payments due under the loan agreement. Courts in other circuits have held that, consistent with § 521(2), a debtor who is current on a loan may follow this course of action. E.g., Home Owners Funding Corp. v. Belanger (In re Belanger), 962 F.2d 345, 348-49 (4th Cir.1992); Lowry Federal Credit Union v. West, 882 F.2d 1543, 1547 (10th Cir.1989); Sears Roebuck & Co. v. Lamirande, 199 B.R. 221, 224 (D.Mass.1996); In re Hunter, 121 B.R. 609, 617 (Bankr.N.D.Ala.1990); In re Crouch, 104 B.R. 770, 772-73 (Bankr.S.D.W.Va.1989). Boodrow also argues that Capital alleged no affirmative harm justifying the lifting of the stay.
 
 
 17
 It is not clear to us that violation of § 521(2) would automatically require a bankruptcy court to lift the automatic stay. See Lowry, 882 F.2d at 1546 (holding that debtor's failure to comply with § 521(2) did not warrant such relief). However, even assuming that such violation constitutes cause for lifting the stay, we find, for reasons discussed below, that Capital has not shown that Boodrow violated § 521(2).
 
 
 18
 (1) Text of Section 521(2)
 
 
 19
 Section 521(2), reproduced in note 1 above, was added to the Bankruptcy Code by the Bankruptcy Amendment and Federal Judgeship Act of 1984 and states in relevant part that
 
 
 20
 the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property.
 
 
 21
 11 U.S.C. § 521(2)(A) (emphasis added). As Capital points out, surrender requires a debtor to return the collateral to the creditor. Redemption is governed by 11 U.S.C. § 722, reproduced in the margin.[5] That section allows a debtor to retain the collateral by paying the creditor the value of the property. Most courts require a debtor to pay the creditor in one "lump sum" payment rather than in installments, unless the creditor agrees otherwise. Collier, p 722.05 at 722-11 to 722-12. Alternatively, a debtor can reaffirm a debt by entering into a new loan agreement with the creditor, a legal obligation that survives the debtor's discharge from bankruptcy. See 11 U.S.C. § 524(c). Capital observes, however, that in a reaffirmation agreement the parties can negotiate new terms to supplant those in the original loan agreement, and that the creditor's acceptance of the agreement must be voluntary.
 
 
 22
 It is clear that the "starting point in every case involving construction of a statute is the language itself. But the text is only the starting point," Kelly v. Robinson, 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986) (internal citations omitted), especially when the language is ambiguous. The Supreme Court has thus explained in interpreting other sections of the Bankruptcy Code that "we must not be guided by a single sentence or [part] of a sentence, but look to the provisions of the whole law, and to its object and policy." Id. (internal quotes and citations omitted); Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072-73 (2d Cir.1993) (when statute is ambiguous, "other tools of interpretation beyond a plain reading" may be utilized). With these principles in mind, we first turn to the text of § 521(2).
 
 
 23
 The bankruptcy and district courts in this case both held that the language of § 521(2)(A), quoted above, did not prevent the bankruptcy court from allowing Boodrow to retain the collateral and continue to perform under the loan agreement. (This course of action has been described as "reinstatement,"[6] a term we use at times hereafter in this opinion.) 192 B.R. at 59, 197 B.R. at 411-12. Both courts relied on In re Belanger, where the Fourth Circuit explained that
 
 
 24
 [t]he fact that the statutory options are stated in the disjunctive shows that the words "if applicable" are unnecessary under a construction of the statute that makes the options exclusive. But if the phrase "if applicable" is given effect, it plays an important role.... [T]he debtor must specify a choice of the options if applicable. But if these options are not applicable, the debtor need not specify them.
 
 
 25
 962 F.2d at 348 (internal citations omitted); see also Sears Roebuck & Co. v. Lamirande, 199 B.R. at 224; In re Hunter, 121 B.R. 609, 617 (adopting same reading of "plain language" of § 521(2)(A)); In re Crouch, 104 B.R. at 772 (same). The Belanger court noted that its reading of the statute complied with the "canon that courts should give effect, if possible, to every word in a statute." Belanger, 962 F.2d at 348 (citing Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979)).
 
 
 26
 In support of this interpretation, Collier states that "[n]othing in section 521(2) requires the debtor to choose redemption, reaffirmation or surrender of the property to the exclusion of all other alternatives. Section 521(2) merely requires a statement of whether the debtor intends to choose any of those options, if applicable." Collier, p 521.10, at 521-34 to 521-35 (footnote omitted). One court has held that the options listed in § 521(2) were not exclusive and explained that in Chapter 7 bankruptcies the trustee often sells encumbered property, using the proceeds to settle creditors' claims. In re Parker, 142 B.R. 327, 330 (Bankr.W.D.Ark.1992). The court noted that "[i]n this common scenario, none of the three so-called mandatory alternatives listed in [§ 521(2)(A) ] have occurred." Id.
 
 
 27
 Capital counters that the plain language of § 521(2)(A) shows that Congress intended the options set forth to be the only ones available to a debtor. Capital relies on the reasoning of In re Taylor, where the Seventh Circuit explained the meaning of the phrase "if applicable" as follows:
 
 
 28
 [I]t is clear when the options of redemption and reaffirmation would not be applicable. This language does not apply to a debtor's surrender of the property; it therefore must apply to a debtor's retention of property. If a debtor retains secured property, then the options of redemption and reaffirmation are applicable and the debtor is required to redeem or reaffirm.
 
 
 29
 In re Taylor, 3 F.3d at 1516. Capital argues that § 521(2)(A) would be confusing without "if applicable" because it would require a debtor who decides to surrender the collateral to indicate an intention to reaffirm or redeem, two choices that do not logically apply if the debtor is giving back the collateral.[7]
 
 
 30
 Both parties assert that their interpretation of § 521(2)(A) better comports with other subsections of § 521(2). Capital maintains that reinstatement cannot be reconciled with § 521(2)(B), which states in relevant part that "within forty-five days after the filing of a notice of intent ... the debtor shall perform his intention with respect to such property." Admittedly, retaining the collateral and continuing to make scheduled payments is not action that typically can be performed within 45 days. See In re Taylor, 3 F.3d at 1516; cf. In re Edwards, 901 F.2d at 1386. Capital also insists that the options listed in § 521(2)(A) must be exclusive because nowhere else does the Code provide for additional options.
 
 
 31
 Boodrow argues, on the other hand, that his interpretation of § 521(2)(A) is reinforced by § 521(2)(C), which states that "nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title." The district court here agreed, 197 B.R. at 412, relying on In re Belanger, where the Fourth Circuit noted that, before the enactment of § 521(2), one bankruptcy court had held that a debtor who was not in default on a loan was entitled to retain the collateral securing the loan as long as he remained current on the loan payments. In re Belanger, 962 F.2d at 347 (citing In re Ballance, 33 B.R. 89 (Bankr.E.D.Va.1983)).
 
 
 32
 Although § 521(2)(A) clearly imposes a mandatory obligation on a debtor to state whether he intends to retain or surrender collateral, we find the section to be ambiguous as to whether Congress intended the options there listed to be exclusive, and we believe that the "plain" language arguably supports either of the interpretations described above. We thus turn to other sources for evidence of congressional intent as to the meaning of § 521(2).
 
 
 33
 (2) Legislative History and Policy
 
 
 34
 The bankruptcy court in this case concluded that review of the legislative history of § 521(2) did "not assist resolution of this matter," noting that no Senate or House report became part of the record regarding § 521(2). 192 B.R. at 59. Nevertheless, the district court found that the "limited legislative history points to the general conclusion that Section 521(2) is meant to be a notice provision." 197 B.R. at 412. Judge Small, the bankruptcy judge in In re Belanger, came to the same conclusion based on detailed statements made at a congressional subcommittee hearing by "a coalition of bankers, credit unions, finance companies, oil companies and retailers." In re Belanger, 118 B.R. at 370. Those statements indicate that § 521(2)(A) was intended specifically to eliminate the problem that secured creditors could not determine what a debtor who had filed for bankruptcy was going to do with collateral securing a debt. Id. at 370-71 & n. 5. Instead of the creditor having to spend time and money obtaining this information through judicial proceedings, § 521(2) placed on a debtor "the responsibility of giving creditors information ... as to what they intend to do with the collateral." Id. at 370 n. 5.
 
 
 35
 We agree that § 521(2) appears to serve primarily a notice function, not necessarily to restrict the substantive options available to a debtor who wishes to retain collateral securing a debt. With respect to Capital's argument that the time limit in § 521(2)(B) precludes such a conclusion, the district court here reasoned that "[o]bviously, under such a scheme it is appropriate to set a time limit for action upon such a statement, but that limit does not necessarily change the nature of the section" as one aimed at providing notice to creditors of a debtor's intentions. 197 B.R. at 412. We note also that a bankruptcy court has discretion under § 521(2)(B) to give a debtor "additional time ... for cause" beyond the 45-day deadline to perform a stated intention.
 
 
 36
 Moreover, we believe that the interpretation advocated by Boodrow and adopted by the courts below better comports with the policies behind the Bankruptcy Code. The bankruptcy court viewed Boodrow's interpretation of § 521(2) as "most consistent with balancing the 'fresh start' policy underlying the Code and the rights of the ... secured creditor[s]." 192 B.R. at 59. The policy embodied in the Code that a debtor discharged from bankruptcy should receive a "fresh start" has been emphasized time and again by the Supreme Court and this court. E.g., Local Loan Co. v. Hunt, 292 U.S. 234, 244-45, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); Lines v. Frederick, 400 U.S. 18, 19, 91 S.Ct. 113, 113-14, 27 L.Ed.2d 124 (1970) (per curiam); State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1310 (2d Cir.1996); Green v. Welsh, 956 F.2d 30, 33 (2d Cir.1992).
 
 
 37
 Confining an individual Chapter 7 debtor to the choices of surrender, redemption or reaffirmation can severely interfere with providing the debtor a fresh start. As Judge Butzner explained in In re Belanger, a debtor is "unlikely to be able to redeem the collateral in a lump sum as required by § 722," and "reaffirmation requires the consent of the creditor in order to comply with § 524(c)." 962 F.2d at 348. Thus, if the options listed in § 521(2) were exclusive, a debtor's only real choices would be either to reaffirm the debt under whatever new terms the creditor requires or to surrender the property. Because reaffirmation involves negotiation between parties with unequal bargaining power and requires voluntary agreement by both debtor and creditor, it gives a creditor an effective veto on the "fresh start." Yet, surrender may deprive a debtor of much needed property, such as disabled debtor Boodrow's vehicle in this case.
 
 
 38
 Capital responds that a creditor faces the possibility of "substantial financial danger" and "very real loss" when a bankruptcy court allows a debtor to retain property without redeeming or reaffirming. Capital explains that because bankruptcy discharges a debtor from personal liability on outstanding loans, Capital's only remedy if Boodrow defaulted on the loan after discharge would be to commence legal action to recover the vehicle. Capital would not then be entitled to recover the difference, if any, between the outstanding balance on the loan and the value of the vehicle. Further, Capital argues that a debtor whose personal liability is discharged through bankruptcy has no incentive to maintain the collateral in good condition or to continue making payments if the value of the collateral drops below the amount outstanding on the loan. See In re Edwards, 901 F.2d at 1386. Finally, Capital contends that Boodrow's interpretation of § 521(2) would in effect negate reaffirmation because no debtor would reaffirm personal liability rather than simply continue to make payments on the loan and retain the collateral. See id. at 1386; In re Taylor, 3 F.3d at 1515-16. Capital asserts, as the court stated in In re Taylor, that this additional option gives the debtor "not a 'fresh start' but a 'head start.' " Id. at 1516.
 
 
 39
 It is true that a debtor's discharge from bankruptcy eliminates personal liability on the loan, thereby theoretically limiting the amount a creditor could recover if the debtor defaults. However, we disagree with Capital's assumption that a creditor will necessarily or even probably suffer financial injury when a debtor who is current on a loan retains the collateral and continues to make the payments required under the loan agreement. As the court in In re Crouch observed, because a creditor can recover the collateral from a discharged debtor who defaults on a loan, the creditor's main concern should be that, upon default, the value of the collateral exceeds the amount outstanding on the loan. In re Crouch, 104 B.R. at 773 (citation omitted). The bankruptcy court here characterized Capital's suggestion that Boodrow would not have any incentive to maintain the collateral as "uninformed with regard to the realities of the typical Chapter 7 case." 192 B.R. at 59. Boodrow argues that "there is a great incentive for [him] to maintain current on the debt and to preserve the auto since he has no means to acquire another auto." Indeed, the bankruptcy court explained that a
 
 
 40
 debtor's ability to obtain credit on the same (or comparable) terms as nondebtors, is generally impaired by filing bankruptcy. If a debtor fails to maintain or permits a waste of collateral, such as an automobile, he is therefore less able than a nondebtor to obtain financing required to replace the collateral. As a result, debtors are generally likely to have a greater incentive than nondebtors to stay current on payments and to maintain the value of the collateral.
 
 
 41
 Id.
 
 
 42
 In any event, other courts have noted that a debtor's failure, after discharge, to insure or maintain collateral typically permits a creditor to
 
 
 43
 accelerate the indebtedness and repossess the collateral. In fact default clauses which permit the lender to declare a default in the event that the creditor deems its security interest insecure are specifically authorized by the Uniform Commercial Code and may be exercised by a secured lender if it has a good faith belief that the prospect for payment is impaired.
 
 
 44
 In re Belanger, 118 B.R. at 372; In re Parker, 142 B.R. at 330. We thus disagree that a creditor invariably, or even probably, will lose the benefit of its bargain under the original loan agreement when a bankruptcy court permits reinstatement.
 
 
 45
 With regard to Capital's contention that Boodrow's interpretation of § 521(2) reads reaffirmation out of the statute, amicus NACBA points out that sometimes a debtor has an incentive to reaffirm a debt. The NACBA brief explains that a debtor may seek to reaffirm in order to reestablish credit standing after a bankruptcy discharge or, if the debtor was not current on the loan when the bankruptcy petition was filed, to obtain a new agreement that would provide for the right to cure the arrearage and avoid default. The brief also notes that sometimes a debtor may want to reaffirm in order to retain the benefit of certain consumer protection provisions contained in the original loan agreement. They thus challenge Capital's assumption that no debtor would choose reaffirmation.
 
 
 46
 In any event, Capital's argument misapprehends the scope of the holding that we review in this case. The district court explained that a bankruptcy court must exercise its discretion in determining whether a debtor may retain collateral and keep making payments by considering the debtor's "previous payment record, a comparison of the value of the collateral and the amount of debt, and other relevant facts." 197 B.R. at 412; see Lowry, 882 F.2d at 1547 (holding that bankruptcy court has such discretion only when "evidence indicates neither the debtor nor the creditor would be prejudiced"). Thus, a debtor in default on a loan at the time of the bankruptcy petition or whose behavior indicates that he will not be able to continue making scheduled payments might well suffer a lifting of the stay. In fact, Judge Littlefield--the bankruptcy judge in this case--recently granted summary judgment to a creditor because a debtor not current on his loan obligation had not reaffirmed the loan or redeemed or surrendered the collateral. Beneficial N.Y., Inc. v. Bushey (In re Bushey), 204 B.R. 661, 663-64 (Bankr.N.D.N.Y.1997).
 
 
 47
 After considering the text of § 521(2), its legislative history and the policies informing the Bankruptcy Code, we hold that § 521(2) does not prevent a bankruptcy court from allowing a debtor who is current on loan obligations to retain the collateral and keep making payments under the original loan agreement.[8]
 
 
 48
 (3) Exercise of Discretion
 
 
 49
 We turn now to whether the bankruptcy court abused its discretion in refusing to grant Capital the relief it sought. We agree with both courts below that Capital had the burden of showing that "continuation of the stay [would] cause some affirmative harm" to its interest in the vehicle. 197 B.R. at 413. As noted above, Boodrow was current on his loan payments when the bankruptcy petition was filed. We have no information to indicate that Boodrow has, at any time since then, failed to make required payments. We agree with the district court that because Boodrow's disability insurance was making the monthly loan payments, there was little chance that Boodrow would default.
 
 
 50
 Moreover, in determining whether a creditor's interest in a debtor's property is adequately protected, "most courts engage in an analysis of the property's 'equity cushion.' " Nantucket Investors II v. California Federal Bank (In re Indian Palms Assocs., Ltd.), 61 F.3d 197, 207 (3d Cir.1995); Collier, p 362.07[d] at 362-88 (adequate protection when the "value of the collateral available to the creditor exceeds by a comfortable margin the amount of the creditor's claim"). Capital conceded in the district court that the value of the vehicle exceeded the amount outstanding on the loan by 10 percent. 197 B.R. at 413. Thus, even if Boodrow had defaulted on the loan, Capital could have recovered the full amount to which it was entitled under the original loan agreement. At no time has Capital alleged any particularized harm--including the failure to receive any payment due under the loan agreement--flowing from the bankruptcy court's denial of the relief it sought. We thus hold that the bankruptcy court did not abuse its discretion in denying Capital's motion.
 
 
 51
 Affirmed.
 
 SHADUR, District Judge, dissenting:
 
 52
 There are two respects in which my analysis diverges from that of my colleagues. First and most fundamentally, I believe that the most basic jurisprudential principles teach that the case now before us is not only moot but--somewhat astonishingly--was moot even before the Bankruptcy Court rendered its decision. Second, if that problem were not present, so that we were in a position to reach the merits, I believe that the unambiguous language of Section 521(2) renders it inappropriate for this Court to fashion a "reinstatement" remedy for debtors in Boodrow's position. Hence I am constrained to dissent with all respect.
 
 Mootness
 
 53
 However tempting it might be to address the important substantive issue set out by the parties on this appeal, it will be time enough to do so when a live controversy posing that issue reaches this Court, as it has reached the several other Courts of Appeals that have weighed in on the subject. But here the fatal defect is that Article III, Section 2 of the United States Constitution extends the "judicial Power" of this and all other federal courts only to the resolution of actual "Cases" and "Controversies." As a matter of constitutional law, the Supreme Court has consistently announced that a federal court "may only adjudicate actual, ongoing controversies" (Honig v. Doe, 484 U.S. 305, 317, 108 S.Ct. 592, 601, 98 L.Ed.2d 686 (1988)). When a case becomes moot we must dismiss it, for federal courts lack subject matter jurisdiction over a moot action (Fox v. Board of Trustees, 42 F.3d 135, 140 (2d Cir.1994)). And this is true "even if the case was live at the outset but later events rendered it moot on appeal" (New York City Employees' Retirement Sys. v. Dole Food Co., 969 F.2d 1430, 1433 (2d Cir.1992)). A fortiori, then, the same principle operates when any dispute, though live when an action or motion was first filed, has been rendered moot even before it was decided by the court of first resort.
 
 
 54
 By operation of 11 U.S.C. § 362(a),[1] debtor Brian Boodrow ("Boodrow") and the property of his estate were protected by the automatic stay immediately upon Boodrow's filing of his Chapter 7 petition. Hence the July 5, 1995 "Motion for Relief From Automatic Stay" filed by Capital Communications Federal Credit Union ("Capital") unquestionably presented a live dispute to the Bankruptcy Court when it was first tendered. At that time the automatic stay imposed a direct barrier against any state law remedy (such as foreclosure) that Capital might have sought to exercise to enforce its security interest in Boodrow's vehicle.
 
 
 55
 But just as certainly the Bankruptcy Court's September 5, 1995 order that discharged Boodrow from bankruptcy made Capital's petition for relief from that stay a moot request. Under Section 362(c)(2)(C) the Bankruptcy Court's discharge order terminated the automatic stay by operation of law. Thus as of September 5 Capital's motion for relief from stay had become a legal nullity. Capital "lack[ed] a legally cognizable interest in the outcome" of its motion (County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979), quoting Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969)), for the stay from which Capital had initially sought relief no longer existed (In re Ames, 973 F.2d 849, 852 (10th Cir.1992); Olive St. Inv., Inc. v. Howard Sav. Bank, 972 F.2d 214, 216 (8th Cir.1992)(per curiam); and cases cited in both of those opinions).
 
 
 56
 That being the case, the absence of a live dispute should have foreclosed the entry of the Bankruptcy Court's December 27, 1995 order denying relief from stay--the order now sought to be reviewed on this appeal.[2] And in my view such absence of a live controversy even before the Bankruptcy Court ruled, and the absence of a live controversy today, incontrovertibly call for the dismissal of this appeal.
 
 
 57
 My colleagues' suggestion that Capital might have standing due to the continuing existence of the automatic stay as to what might be "estate property" is troubling. Not only is that hypothetical posture for this appeal not supported by the record, but the past and present posture of Boodrow's automobile is simply inconsistent with any notion that the car is held as property of the estate. "Chapter 7 debtors have no right to use, sell, or lease nonexempt property of the estate" (1 Robert E. Ginsberg & Robert D. Martin, Ginsberg & Martin on Bankruptcy ("Ginsberg & Martin") § 5.05[A], at 5-42 (4th ed. Supp.1997)), yet Boodrow has had possession and use of the automobile for over two years--since the very inception of the bankruptcy estate in May 1995. Post-discharge property of a Chapter 7 estate (to which the automatic stay might continue to apply) is property in the possession of the bankruptcy trustee and not the debtor (1 Ginsberg & Martin § 3.07[F], at 3-84[3]). And it is the trustee and not the debtor that has the corresponding standing to protect property of the estate. But here the trustee has been conspicuously absent from every stage of this litigation--no interest has ever been asserted on behalf of the estate.
 
 
 58
 Indeed, although each of the litigants (and amici curiae) has set forth an asserted reason why this Court might still entertain this appeal, it is plain that none of them holds out the belief that Boodrow's automobile is still subject to the protection of the automatic stay. Instead the record is replete with representations that the stay from which Capital sought relief terminated upon Boodrow's September 5, 1995 discharge. For example, in his response brief Boodrow says:
 
 
 59
 [Boodrow] received his discharge on September 5, 1995. The stay therefore was terminated per 11 U.S.C. § 362(c)(2)(c). If there was a default [Capital] would be entitled to proceed to enforce its rights in State Court. [Capital] presents and argues an intellectually challenging issue which for all practical purposes is moot at this point in time in this bankruptcy case.
 
 
 60
 Capital--though it now argues (after we compelled it to face up to the mootness question) that this case presents an exception to the mootness doctrine of "capable of repetition, yet evading review"--has similarly confirmed that Boodrow's discharge terminated the automatic stay at issue:
 
 
 61
 In the case at bar, [Capital] filed a motion to lift the automatic stay under Bankruptcy Code Section 362 on the ground that the debtor failed to reaffirm, redeem or surrender the collateral in accordance with Bankruptcy Code 521. This case is exactly the type of situation in which once the motion was denied, a discharge would be issued and the question normally moot.
 
 
 62
 Finally, amicus Key Bank of New York ("Key Bank") also admits in its supplemental brief that "the stay has been vacated and a discharge granted."
 
 
 63
 It must be remembered that Capital sought to enforce Section 521(2)'s notice provision by asking only for relief from the automatic stay, rather than through a motion to dismiss or a motion to compel the debtor to exercise one of the options set out in Section 521(2)(A), as was done in such cases as In re Johnson, 89 F.3d 249 (5th Cir.1996)(per curiam), In re Taylor, 3 F.3d 1512 (11th Cir.1993) and In re Belanger, 962 F.2d 345 (4th Cir.1992).[4] To be sure, as In re Weir, 173 B.R. 682, 690 (Bankr.E.D.Cal.1994) explains, relief from stay is often of little practical utility to a creditor in the absence of the debtor's default:
 
 
 64
 The problem with relief from stay from the creditor's standpoint is that relief merely permits the creditor to enforce its rights under state law. If the debtor is in default, the creditor must follow the procedures established by state law for enforcing its rights in the collateral. Where, however, there is no default, the state law hurdle becomes insurmountable.
 
 
 65
 But that strategic decision as to Capital's line of attack was a matter left to the sound discretion of its counsel.[5]
 
 
 66
 What is clear instead is that relief from the stay is the only claim stated in Capital's July 5, 1995 motion, the only relief considered by the Bankruptcy Court (192 B.R. 57, 60 (Bankr.N.D.N.Y.1995)) and indeed the only relief sought by Capital on this appeal (Capital Br. 24). Courts are always confronted with records that have been shaped by the litigants. And because the record thus shaped on this appeal--like the record before the Bankruptcy Court and then before the District Court at the time that each of them acted--does not present a "Case" or "Controversy," I submit that we are constrained by the Constitution to eschew a decision on the merits.
 
 
 67
 It is, I suggest, equally inappropriate for us to reformulate Capital's own claim on a post hoc basis so that we may now announce a decision on the merits of the underlying legal issue. Indeed, the prevailing judicial cleavage as to precisely how Section 521(2) is to be read and enforced makes reticence by this Court on a question posed on a purely hypothetical basis particularly apt (Lowry Fed. Credit Union v. West, 882 F.2d 1543, 1546 (10th Cir.1989); Weir, 173 B.R. at 690-93). For if Capital had sought a remedy other than relief from the stay, we would now be dealing with a significantly different record--involving the (almost certainly contested) application of altogether different provisions of the Bankruptcy Code (Weir, id.).[6]
 
 
 68
 Finally, the suggestion made by Capital, Boodrow and Key Bank (the only response that the parties litigant, unlike the panel opinion, have proffered to counter the problem of mootness) that we should nevertheless reach the merits because the issue presented on this appeal is one "capable of repetition, yet evading review" vanishes on analysis. That exception to the mootness doctrine, first announced by the Supreme Court in Southern Pac. Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), "applies only in exceptional situations" (City of Los Angeles v. Lyons, 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983)) where (Haley v. Pataki, 60 F.3d 137, 141 (2d Cir.1995), quoting Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975)):
 
 
 69
 (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subject to the same action again.
 
 
 70
 And the actual judicial experience in dealing with the precise substantive question that is sought to be posed by this case demonstrates the failure of the claim before us to satisfy the first of those criteria.[7]
 
 
 71
 That "evading review" argument is really torpedoed by each of the decided cases in other jurisdictions construing Section 521(2). As already indicated, each of the cases in other Circuits--cases such as Johnson, Taylor and Belanger--dealt with a wholly live controversy stemming from the denial of a creditor's motion to compel a debtor to exercise one of the options given by Section 521(2)(A). In like fashion, nothing prevents the same legal issue that the present parties have tendered in a purely hypothetical matrix from coming before a Bankruptcy Court and District Court in this Circuit, and hence before this Court, in an active "Case" or "Controversy" posture. Only Capital's strategic decision to fashion its requested remedy solely in terms of relief from the stay distinguishes this action from those properly reviewed in other Circuits.
 
 
 72
 And even if we were to put so fine a point on Capital's claim as to evaluate whether the propriety of its requested remedy (relief from stay) for a claimed violation of Section 521(2) evades review, Capital's position would still fail. For although the Bankruptcy Court found that the average lifespan of a Chapter 7 suit is 4.8 months (192 B.R. at 60), by definition that reference to an "average time" indicates the existence of cases involving longer periods. Data from the Administrative Office of the United States Courts demonstrate that over 39,000 Chapter 7 cases were closed in statistical years 1991 and 1992 with lifespans of greater than 2 years (Report to Chairman, Subcomm. on Econ. & Commercial Law, Comm. on the Judiciary, House of Representatives, from the U.S. General Accounting Office, July 13, 1994, App. V, reprinted at 1994 WL 810651). Nothing in the record before the Bankruptcy Court (and therefore before us) provides any reason to believe that the issue now before us was not posed by, and fully reviewable in, any number of those cases (and will not become fully reviewable in any number of similar future cases). Indeed, at least one reported decision (Riggs Nat'l Bank v. Perry, 729 F.2d 982, 986 (4th Cir.1984)) has directly considered (without deciding) whether relief from the automatic stay was even an appropriate remedy for a debtor's failure to comply with Section 521(2)'s statement of intention. That decision, I believe, further confirms that Capital's claim is not one that "evades review"--instead, just such a claim may appropriately be dealt with as and when a case arises that has not been mooted, as this one was at its very inception.
 
 
 73
 In sum, I believe that the Bankruptcy Court's September 5, 1995 discharge order--which terminated the automatic stay at issue in this case as a matter of law under Section 362(e)(2)(C)--necessarily rendered moot Capital's earlier motion for relief from that stay. We are limited by the powers delegated to us by Article III, and for that reason we simply lack jurisdiction to adjudicate such a moot action. Consequently I submit that this appeal should be dismissed.
 
 The Merits
 
 74
 As a matter of pure logic, what I have said to this point ought to prevent me from going on to the merits of the proper reading and application of Section 521(2). But because I also depart from the panel's treatment of those subjects, in the interest of full disclosure I believe that I should explain my dissent on that score as well.
 
 
 75
 My colleagues, finding particularly persuasive the Fourth Circuit's decision in Belanger, deem the language of Section 521(2) to be ambiguous. And having so found, they embark on a rather extensive review of which interpretation of Section 521(2) best comports with the general "fresh start" policy of the Bankruptcy Code. When they determine that limiting Boodrow's options to the three articulated possibilities of Section 521(2)(A) might "severely interfere" with his opportunity for a fresh start, my colleagues read the statute as providing a debtor with a so-called "fourth option" of retaining secured collateral and keeping current on the debtor's installment loan payments.
 
 
 76
 In my view, however, that decision is for Congress to make--not one for judicial legislation--and Congress has spoken plainly indeed in Section 521(2). As identified by my colleagues, the pertinent portion of Section 521(2)(A) provides (emphasis added):
 
 
 77
 the debtor shall file with the clerk a statement of his intentions with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property.
 
 
 78
 In that respect, I believe that all but one of the Courts of Appeals that have examined the matter--the Fifth Circuit (Johnson, 89 F.3d at 252), the Seventh Circuit (In re Edwards, 901 F.2d 1383, 1385-87 (7th Cir.1990)), the Tenth Circuit (Lowry, 882 F.2d at 1545) and the Eleventh Circuit (Taylor, 3 F.3d at 1516) have properly read the plain language of that section in a totally different way from Belanger and the panel opinion here.
 
 
 79
 As stated in Taylor, id. (most citations omitted, emphasis in original):
 
 
 80
 The Taylors urge us to adopt the Fourth Circuit's holding in In re Belanger, 962 F.2d 345 (4th Cir.1992), which permits a debtor to retain his or her property and keep current on his or her obligation under the existing contract. They also rely on several bankruptcy opinions from this circuit. Most of these courts focused upon the phrase "if applicable" and reasoned that if a debtor wishes to retain secured property but does not want to redeem or reaffirm, then those options are not "applicable." This reasoning does not comport with the plain language of section 521 which states that "the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property, and if applicable...." Referring to the language preceding the phrase "if applicable," it is clear when the options of redemption and reaffirmation would not be applicable. This language does not apply to a debtor's surrender of the property; it therefore must apply to a debtor's retention of property. If a debtor retains secured property, then the options of redemption and reaffirmation are applicable and the debtor is required to redeem or reaffirm.
 
 
 81
 And though the Tenth Circuit in Lowry, 882 F.2d at 1545-46 found difficulties posed by the absence of a stated enforcement mechanism for Section 521(2), the court there expressed its conclusion as to the unambiguous language of that section even more forcefully (id. at 1545):
 
 
 82
 The creditor argues that the requirements of § 521(2) are mandatory. That is obvious. There is no room within the direct language of the section to presume otherwise.
 
 Lowry, id. at 1545 n. 2 continued:
 
 83
 To escape the mandatory language of the section, debtors argue the "if applicable" phrase gives a debtor some form of option. We are unpersuaded by that argument because it is inconsistent with the plain meaning of the statute. The words "if applicable" are gratuitous and do not affect the mandatory duties prescribed by the statute. The plain English of the section requires every debtor in possession of collateral to make an election whether to retain or relinquish that property. If the debtor decides to retain, the debtor is required to elect whether to redeem or reaffirm. The section also requires the choice be effected within 45 days no matter whether the decision is to retain or relinquish. No other meaning can be gained from the precise terms of the statute, and nothing suggests the debtor can simply elect to retain the property and ignore the other duties required by § 521(2).
 
 
 84
 To support a different reading of the statute as somehow ambiguous, my colleagues look to the Fourth Circuit's decision in Belanger, 962 F.2d at 348, which had a different take on the phrase "if applicable" in Section 521(2):
 
 
 85
 The phrase "if applicable" is redundant if, contrary to [what is now 4 Lawrence P. King, Collier on Bankruptcy § 521.10, at 521-34 to -35 (15th ed. rev.1997) ] and the district court, the options given to the debtor are considered to be exclusive. If this were so, § 521(2)(A) would have simply provided: "and specifying that such property is claimed as exempt, that the debtor intends to redeem such, or that the debtor intends to reaffirm debts secured by such property." The fact that the statutory options are stated in the disjunctive shows that the words "if applicable" are unnecessary under a construction of the statute that makes the options exclusive. But if the phrase "if applicable" is given effect, it plays an important role. As Collier points out, the debtor must specify a choice of the options if applicable. But if these options are not applicable, the debtor need not specify them.
 
 
 86
 But like all of the other Courts of Appeals except for the Fourth Circuit, I consider that such a reading of the "if applicable" phrase--to connote the existence of an unexpressed "fourth option"--demands an inordinately awkward use of the statutory language. That construction reads the statute both (1) as though Congress had said that the statutorily identified options of exemption, redemption, or reaffirmation would be the only ones available solely if the debtor decides that one of those "is applicable" (something that Congress certainly did not say) and (2) as though Congress had also said (as it also certainly did not) that some alternative other than those three choices was available if the debtor decided on such other alternative. By contrast, it is perfectly conventional usage--and perfectly good English--for someone to employ the "if applicable" language in the statute as a shorthand way of calling for a choice between A and B and, only if B "is applicable," then a further choice among subsets of B.
 
 
 87
 Further, as my colleagues recognize, limiting a debtor to one of those three expressly stated options is most consistent with the language of the very next subpart of Section 521(2), Section 521(2)(B). That subsection provides (emphasis added):
 
 
 88
 within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph.
 
 
 89
 As recognized in such cases as Taylor, 3 F.3d at 1516, that obligation of a debtor to "perform his intention" within 45 days after filing the notice of intent is totally at odds with any concept of Congress having contemplated a "fourth option" involving a continued and extended payout schedule that would run the length of the underlying consumer debt contract--a period of many months (or years) in most cases. And my colleagues' position that the bankruptcy court's discretion to extend that 45-day period "for cause" might equate with a permissible period of performance extending over several years really fabricates that "fourth option" out of whole cloth, particularly when no other language in the Bankruptcy Code would support such a result.[8]
 
 
 90
 Finally, I submit that limiting a Chapter 7 debtor to the three options expressly articulated in Section 521(2)(A) is perfectly consistent with the qualifying language of Section 521(2)(C), which provides:
 
 
 91
 nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title.
 
 
 92
 My colleagues cite to one bankruptcy court decision predating the enactment of Section 521(2) that held that a debtor not in default might retain collateral so long as that debtor remained current on the pre-bankruptcy loan. From that decision, my colleagues reason that strictly limiting a debtor to the three alternatives listed in Section 521(2)(A) would impermissibly alter the law--in plain contravention, they suggest, of Section 521(2)(C).
 
 
 93
 But limiting a Chapter 7 debtor to the three congressionally stated options of Section 521(2)(A) involves no substantive change to the Bankruptcy Code. Initially, it is surely worth mention that the state of the law before the effective date of Section 521(2) was far from settled. Indeed, before 1984 there was no shortage of authority for the proposition that a Chapter 7 debtor had no right to continue performance (absent creditor-approved reaffirmation) under a secured consumer debt contract (see, e.g., In re Bell, 700 F.2d 1053, 1055-57 (6th Cir.1983); In re Schweitzer, 19 B.R. 860, 864 n. 8 (Bankr.E.D.N.Y.1982); In re Whatley, 16 B.R. 394, 397 (Bankr.N.D.Ohio 1982)).
 
 
 94
 But far more significant, I submit, is the total absence from the Bankruptcy Code of any provision that would expressly permit the "fourth option" now recognized by my colleagues. Any practitioner possessing even a modicum of familiarity with bankruptcy proceedings knows that this so-called "fourth option" would be by far the most advantageous option for many Chapter 7 debtors who, though insolvent, file for bankruptcy while they are current on their secured consumer loans. For unlike a Section 722 redemption, the debtor need not raise funds sufficient to pay the full "amount of the allowed secured claim" in one lump-sum payment. And unlike a Section 524(c) reaffirmation, the debtor need not negotiate with creditors--from a disadvantaged bargaining-power position--while facing the likely prospect of having to reaffirm otherwise dischargeable debt. Rather, the "fourth option," if it were to be judicially created, would "give[ ] the debtor not a 'fresh start' but a 'head start' since the debtor effectively converts his secured obligation from recourse to nonrecourse with no downside risk for failing to maintain or insure the lender's collateral" (Taylor, 3 F.3d at 1516). That option allows the debtor to strip from his or her obligation any debt that would in future turn out not to be fully secured by the value of the creditor's collateral, while at the same time avoiding any risk of future personal liability.[9]
 
 
 95
 Yet despite the clear surface attractiveness of that prospect to innumerable Chapter 7 debtors, Congress has simply not seen fit to insert (or even to recognize) such a "reinstatement" option in the Code--whether by a separate explicit provision (as it has in the cases of Section 722 for redemption and Section 524(c) for reaffirmation), or even by reference in the text of Section 521(2)(A). As the Supreme Court's June 16, 1997 decision in Associates Commercial Corp. v. Rash, --- U.S. ----, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997) confirms, when Congress wants to provide for a "cram down" that enables a debtor to keep property over the objection of a secured creditor, it knows full well how to do so. Associates Commercial, id. at ---- - ----, 117 S.Ct. at 1882-83 (footnote omitted) details just how Congress accomplished that result in Chapter 13 of the Code:
 
 
 96
 To qualify for confirmation under Chapter 13, the Rashes' plan had to satisfy the requirements set forth in § 1325(a) of the Code. The Rashes' treatment of ACC's secured claim, in particular, is governed by subsection (a)(5). Under this provision, a plan's proposed treatment of secured claims can be confirmed if one of three conditions is satisfied: the secured creditor accepts the plan, see 11 U.S.C. § 1325(a)(5)(A); the debtor surrenders the property securing the claim to the creditor, see § 1325(a)(5)(C); or the debtor invokes the so-called "cram down" power, see § 1325(a)(5)(B). Under the cram down option, the debtor is permitted to keep the property over the objection of the creditor; the creditor retains the lien securing the claim, see § 1325(a)(5)(B)(i), and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, i.e., the present value of the collateral, see § 1325(a)(5)(B)(ii).
 
 
 97
 In this instance we are being asked to imply a similar "cram down" provision into Chapter 7 as a matter of judicial legislation, even though the Constitution's designated legislator--Congress--has not chosen to do so, as it has expressly elected to do in Chapter 13. As a matter of statutory construction (over and above the clear-language argument that I have already made), I believe that the strong negative implication from Congress' omission of the "fourth option" from Section 521(2)(A) is obvious (Bell, 700 F.2d at 1057 made exactly that point before Section 521(2) was enacted, further buttressing the negative inference from Congress' silence).
 
 
 98
 And further in that regard, the Supreme Court's identification in Associates Commercial, --- U.S. at ----, 117 S.Ct. at 1885 of the risks that are placed on a secured creditor by a debtor's retention of property (a motor vehicle in that case, just as in ours) applies with equal force to suggest further that we should not create a debtor-favored remedy where Congress has not done so explicitly. Ultimately, even if the language of Section 521(2)(A) were to be viewed as ambiguous on this point (as my colleagues suggest), the Supreme Court's teaching in Dewsnup v. Timm, 502 U.S. 410, 419-20, 112 S.Ct. 773, 779-80, 116 L.Ed.2d 903 (1992) dictates that this Court should not create such a broad new remedy for Chapter 7 debtors in the absence of some congressional signal that the judiciary should do so:
 
 
 99
 Of course, where the language is unambiguous, silence in the legislative history cannot be controlling. But, given the ambiguity here, to attribute to Congress the intention to grant a debtor the broad new remedy against allowed claims to the extent that they become "unsecured" for purposes of § 506(a) without the new remedy's being mentioned somewhere in the Code itself or in the annals of Congress is not plausible, in our view, and is contrary to basic bankruptcy principles.
 
 
 100
 In sum, even if we were somehow able to overcome the mootness hurdle to proceed with the merits, I believe that the power simply does not lie in this Court to devise a new Chapter 7 remedy where Congress has opted not to act. For this reason too I part company with my colleagues.
 
 
 101
 As stated at the outset, I respectfully dissent.
 
 
 
 *
 Hon. Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation
 
 
 [1]
 Section 521(2) provides, in relevant part, that:
 (2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate--
 (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier ..., the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
 (B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and
 (C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title.
 
 
 [2]
 Amicus curiae National Association of Consumer Bankruptcy Attorneys (NACBA) took no position on mootness in its supplemental brief
 
 
 [3]
 That section provides, in relevant part, that
 [o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ... (1) for cause, including the lack of adequate protection of an interest in property of such party in interest....
 
 
 [4]
 Section 521(2)(A) also states that a debtor can "specify[ ] that such property is claimed as exempt," but in response to Capital's motion Boodrow made no claim of exemption
 
 
 [5]
 Section 722 provides, in relevant part, that
 [a]n individual debtor may ... redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.
 
 
 [6]
 Professor Joann Henderson describes reinstatement as
 the debtor's right to retain the collateral by continuing regular payments under the security agreement and thereby completing the contract, albeit a somewhat different contract because any personal obligation has been discharged. To qualify for reinstatement, debtors cannot be in default, except for technical defaults such as bankruptcy clause defaults, and must pay the entire debt in accordance with the contract. This right is called reinstatement because it prevents foreclosure and reinstates the contract. Reinstatement allows debtors to continue with business as if bankruptcy had no effect on the secured creditor's position.
 Joann Henderson, The Gaglia-Lowry Brief: A Quantum Leap from Strip Down to Chapter 7, 8 Bankr.Dev. J. 131, 137 (1991).
 
 
 [7]
 The Tenth Circuit has taken the position that a bankruptcy court may allow reinstatement despite the court's belief that the "plain English of the section" required the debtor to select one of the options listed. Lowry, 882 F.2d at 1545 n. 2 (deeming the phrase "if applicable" to be "gratuitous"). The court held that the debtor's "failure to comply fully with § 521(2)" did not warrant relief from the automatic stay so that the creditor could repossess the collateral. Id. at 1546. As will be seen below, although we agree with the outcome in Lowry we disagree with its view that the language of § 521(2)(A) plainly restricts a debtor to redemption, surrender or reaffirmation
 
 
 [8]
 Capital also argues that specific authority for reinstatement cannot be found in the Code. However, the authority for the automatic stay upon the filing of a bankruptcy petition is clear. See § 362(a). As discussed above, that stay can ordinarily be lifted only on a showing of cause
 
 
 [1]
 All further references to provisions of the Bankruptcy Code will take the form "Section--," omitting the repetition of "11 U.S.C."
 
 
 [2]
 Nothing in the record explains why the Bankruptcy Court, having discharged Boodrow and thus having extinguished the stay as a matter of law, nonetheless went on to decide the legal question as to how Section 521(2) should be construed. It is to be sure an interesting as well as an important issue, but the Bankruptcy Court (like this Court) is obligated by Article III to avoid academic questions. Relatedly it is surely significant that appellant Capital's opening brief said nothing at all on the subject--a critical jurisdictional issue--until its very last page, when the Conclusion included the unexplained and totally unsupported parenthetical statement "(which stay is still effective)." It was only when we inquired on the subject that both Capital and Boodrow acknowledged that such was not the case (something that the panel opinion does not acknowledge)--and that it had not been the case even when the Bankruptcy Court ruled
 
 
 [3]
 By contrast, such property may be in the hands of a Chapter 11 debtor in possession or a Chapter 12 or Chapter 13 debtor (id.). That distinction is meaningful and substantive, stemming from the conceptual differences among the types of protection afforded by the different types of bankruptcy proceedings and the correlative differences in the rights of the parties in interest
 
 
 [4]
 It is also troublesome to find references in the panel opinion to Capital's seeking relief from the stay "among other things" and to its motion "to lift the automatic stay and for other relief." Like every other litigant's prayer for relief except in cases seeking a judgment for damages, Capital's petition included a staple boilerplate reference to "such other and further relief as to the Court deems just and proper." But both of the litigants, both courts below and all of the amici curiae have properly viewed Capital as asking only for vacation of the stay, relief that would be total in bankruptcy terms (as pointed out in n. 5, the enforcement of Capital's rights once the impediment of the stay was removed is solely a state law matter assertable in the state court system, not in a bankruptcy proceeding)
 
 
 [5]
 My colleagues' suggestion that the "essential relief" sought by Capital in its motion before the bankruptcy court was a federal court order forcing Boodrow immediately either to pay the loan balance, surrender the vehicle or reaffirm the debt not only rewrites Capital's own motion but appears to misunderstand the very purpose of Capital's motion for relief from the automatic stay. "The effect of lifting the automatic stay is only to allow [the creditor] to pursue its remedies under state law...." (MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc., 882 F.2d 615, 618 (2d Cir.1989)). That is, Capital simply petitioned the bankruptcy court for leave to pursue any available state law remedies that it might have against Boodrow. Despite that, my colleagues--otherwise faced with the absence of a live controversy--hypothesize that Capital might perhaps now be allowed some relief much different from (and far beyond) that ever sought by Capital itself (see note 4). Mootness is not eliminated by reference to an amorphous possibility that has not been advanced by the litigants themselves, but is suggested only in the panel opinion
 
 
 [6]
 My colleagues suggest that this case is not moot because, if we were to reverse, we could remand to the bankruptcy court with orders either to compel Boodrow to make an appropriate Section 521(2) election or to amend Boodrow's discharge. That is an odd suggestion, for what is noticeably missing from that hypothetical statement of possible relief is any mention of the automatic stay. Indeed, such an order would place this Court in the position of granting relief to Capital entirely different from what Capital itself had chosen to request throughout this litigation--up to and including its prayer for relief on this appeal. To rest that possibility on Capital's generic prayer for "such other and further relief as the Court deems just and proper" in its original motion for relief from stay (see n. 4) is, I believe, both inappropriate and prone to substantial future abuse--particular where (as here) none of the parties and neither of the lower courts contemplated (much less addressed) such alternative relief
 
 
 [7]
 Even though the second criterion might also not be met here, I am assuming arguendo for purposes of this discussion that Capital (as a secured lender) might reasonably be expected to face the same problem with some borrower other than Boodrow in the future
 
 
 [8]
 Additionally, my colleagues' suggestion that a debtor's "reinstatement" option might be performed pursuant to Section 521(2)(B) over a period of years is inconsistent with the Bankruptcy Court's handling of this very case. Boodrow's May 1995 Section 521(2) statement of intention indicated that he intended to retain the vehicle and reaffirm his debt to Capital, yet (after a change of circumstances) Boodrow later determined not to reaffirm his debt and merely to remain current on his monthly payments. No supplemental statement of intention was filed stating that intent, nor did the Bankruptcy Court make a finding of "cause" for breach of the Section 521(2)(B) 45-day period or "fix" an additional period of time for performance (as required by that section)
 
 
 [9]
 It is scarcely necessary to observe that the volatility of the market for used consumer goods, automobiles representing a good example, is such that the first-time imposition of that unbargained-for risk on a secured lender such as Capital is extraordinarily unfair. And any judicial creation of that risk for all future cases, by the inexorable operation of the Coase Theorem, will drive the cost of obtaining credit upward. Whose interests does that serve?