**In re Brian BOODROW, Debtor.**

**Bankruptcy No. 95–11657.**

United States Bankruptcy Court,
N.D. New York.

Dec. 27, 1995.

McCarthy & Evanick (William M. McCarthy, of counsel), Albany, New York, for Debtor.

Solomon & Solomon (Douglas M. Fisher, of counsel), Albany, New York, for Capital Communications Federal Credit Union.

### MEMORANDUM–DECISION AND ORDER

ROBERT E. LITTLEFIELD, Jr., Bankruptcy Judge.

The instant contested matter is before the court on the motion by Capital Communications Federal Credit Union ("Capital") for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2) (11 U.S.C. §§ 101–1330 hereinafter the "Code"). This matter is within the court's core jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A), (G).

### FACTS

On May 3, 1995 Brian K. Boodrow ("Debtor") filed his voluntary petition seeking relief under Chapter 7 of the Code ("petition date"). As of the petition date the Debtor

was obligated to Capital in the approximate amount of $8,820 which sum was secured by a first priority lien on the Debtor's 1992 Pontiac Grand Am ("vehicle"). On the Debtor's Statement of Intention filed with his petition he indicated that he intended to retain the vehicle and reaffirm his debt to Capital secured thereby. Post-petition, the Debtor has retained the vehicle, remained substantially current on his monthly payments to Capital and maintained adequate insurance on the vehicle. Capital asserts that the value of the vehicle as of the petition date was $9,650.

During August 1995 Capital brought its instant motion due to the Debtor's failure to reaffirm his obligation to Capital in accordance with his Statement of Intention or, in the alternative, his failure to redeem or surrender the vehicle pursuant to Code § 521. Capital argues that Debtor's failure to exercise one of the three options under Code § 521, to wit, reaffirmation, surrender or redemption, constitutes "cause" warranting termination of the stay.

The Debtor argues that the three options under Code § 521 are not exclusive. He maintains that the Code permits him to retain the vehicle without reaffirming the debt or redeeming the vehicle provided that he is not otherwise in default under the prepetition loan documents (and no other grounds are demonstrated for termination of the stay).

A hearing on Capital's motion was conducted on August 7, 1995 after which the court reserved decision.

## DISCUSSION

The first issue here is whether the Debtor's failure to redeem or surrender the vehicle or reaffirm his debt to Capital secured thereby constitutes sufficient cause under Code § 362(d) warranting termination of the stay with regard to Capital's rights against the vehicle. Therefore the inquiry must begin with an analysis of Code § 521(2).

There are principally two schools of thought with regard to the rights and obligations set forth in Code § 521(2). One view, urged here by Capital, holds that a debtor's options under Code § 521(2)(A) with respect to secured consumer debts are strictly limited to three choices: surrender, redemption or reaffirmation. The leading cases advancing this interpretation are *In re Edwards*, 901 F.2d 1383 (7th Cir.1990), *In re Bell*, 700 F.2d 1053 (6th Cir.1983) and *In re Taylor*, 3 F.3d 1512 (11th Cir.1993). *Edwards* viewed the legislative purpose of Code § 521 as "speak[ing] strongly against permitting debtors to improve their positions dramatically against secured creditors by relieving them of personal liability." *Edwards*, 901 F.2d at 1386. The absence of personal liability on the debt, according to *Edwards*, "the debtor has little or no incentive to insure or maintain" the collateral. *Id.* Under this view, any other interpretation circumvents the debtor's personal liability statutorily provided for with reaffirmation, while permitting debtors to remain current on payments only until the collateral's value has declined below the amount of the debt. *Id.*

The second school holds that debtors possess a fourth option under Code § 521(2). The so-called "fourth option" permits debtors to avoid making an election under Code § 521(2)(A) while retaining the collateral, provided that there is no default (other than filing a bankruptcy petition) under the prepetition loan documents. The main cases articulating this view are *In re Belanger*, 962 F.2d 345 (4th Cir.1992), *Lowry Federal Credit Union v. West*, 882 F.2d 1543 (10th Cir. 1989) and *In re Crouch*, 104 B.R. 770 (Bankr. S.D.W.Va.1989). Proponents of the fourth option reason that Code § 521(2)(A) is essentially a notice statute and procedural in nature. *Lowry*, 882 F.2d at 1546. They construe the language of Code § 521(2)(A) to require a debtor to file a statement of intention regarding the retention or surrender of collateral and "if applicable," a further statement indicating whether the debtor intends to reaffirm the debt or redeem the collateral. Courts adhering to this interpretation reason that it both fosters the "fresh start" policy of the Code and balances the rights of the secured creditor with the debtor's rights under the Code. *Belanger*, 962 F.2d at 348–49;

*In re Parlato,* 185 B.R. 413, 416–17 (Bank. D.Conn.1995).

In *In re Belanger* the Fourth Circuit Court of Appeals endeavored to "give effect, if possible, to every word" in Code § 521(2)(A). *In re Belanger,* 962 F.2d at 348 *citing Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979). In rejecting the holdings in *Edwards, Bell* and *Taylor,* the court observed that the interpretation that Code § 521(2)(A) permits debtor only three exclusive options renders the "if applicable" language meaningless surplusage. *In re Belanger,* 962 F.2d at 348. The court reasoned that if Congress had intended the three options to be exclusive it would have employed language in Code § 521(2)(A) requiring debtors to "specify that such property is claimed as exempt, that the debtor intends to redeem such, or that the debtor intends to reaffirm debts secured by such property." *Id.* It observed that "[t]he fact that the statutory options are stated in the disjunctive shows that the words "if applicable" are unnecessary under a construction of the statute that makes the options exclusive. But if the phrase 'if applicable' is given effect" the debtor need only specify a particular option if applicable and the debtor is not required to specify one of the options if they do not apply. *Id.* As a matter of statutory interpretation, this court adopts *In re Belanger* as the better reasoned view.

A review of the legislative history does not assist resolution of the matter. Unfortunately, neither a Senate nor House report relating to Code § 521(2) became part of the record in connection with the Bankruptcy Amendments and Federal Judgeship Act of 1984. *See In re Home Owners Funding Corp. of America v. Belanger,* 128 B.R. 142, 142 (Bankr.E.D.N.C.1990) (legislative history "inadequate"); *In re Hunter,* 121 B.R. 609, 612 (Bankr.N.D.Ala.1990) (official legislative history "nonexistent"). Therefore, in order to address the matter *sub judice,* it is appropriate to examine the balance between the rights of the parties in light of the policies and goals of the Code.

This court views the "fourth option" (*see e.g., Belanger, Lowry, Parlato, supra*) as that most consistent with balancing the "fresh start" policy underlying the Code and the rights of the secured creditor. One of the most often heard arguments against the fourth option is that it provides debtors with a "head start" instead of a fresh start. *See In re Taylor,* 3 F.3d 1512, 1516 (11th Cir. 1993). This is premised upon the belief that debtors have no incentive post-petition to reasonably maintain the value of collateral beyond the point in time when the debt exceeds its value.

This conclusion, however, reflects a perspective which is uninformed with regard to the realities of the typical Chapter 7 case. A debtor would have little incentive to maintain the automobile and continue paying the secured creditor only if it is assumed that another automobile could be readily obtained. However, a debtor's ability to obtain credit on the same (or comparable) terms as non-debtors is generally impaired by filing bankruptcy. If a debtor fails to maintain or permits a waste of collateral, such as an automobile, he is therefore less able than a nondebtor to obtain financing required to replace the collateral. As a result, debtors are generally likely to have a *greater* incentive than nondebtors to stay current on payments and to maintain the value of collateral. *See* Henderson, J., 8 Bankr.Dev.J. 131, 167 (1991) *The Gaglia–Lowry Brief: A Quantum–Leap From Strip Down To Chapter 7 Cram Down.*

Additionally, under the fourth option the secured creditor receives better treatment of its claim than it would receive as a secured claim holder under Chapters 11 and 13 or if the collateral were redeemed under Code § 722. In each case the amount of the secured creditor's claim would be reduced to the value of the collateral. In Chapters 11 and 13 the secured creditor would receive only the "present value" of its claim, which is generally less than the contract rate of interest which remains unaltered under the fourth option.[1] Accordingly, the arguments that the

1. See generally Code §§ 1129(b)(2)(A) and 1325(a)(5)(B)(ii); *In re Dingley,* 189 B.R. 264

(Bankr.N.D.N.Y.1995).

secured creditors' risk of loss is increased and that the debtor receives a "head start" under the fourth option appear to have little merit.

Moreover, termination of the stay as the remedy for a debtor's failure to comply with Code § 521(2) (without the existence of any other default under the prepetition loan documents) implies the bankruptcy court's recognition of some injury-in-fact to the secured creditor arising solely due to the debtor's failure to reaffirm the debt to the secured creditor. The primary purposes of the stay are to provide both a "breathing spell" to debtors and "creditor protection." H.R.Rep. No. 595, 95th Cong., 1st Sess. 174–175 (1977). Generally, grounds for modification or termination of the stay under Code § 362(d)(1) include a showing that a continuance of the stay will cause some affirmative harm to the secured creditor. The bankruptcy court is, and should be, prepared to act to prevent harm occasioned by the continuance of the automatic stay. As addressed above, however, secured creditors' concerns of postpetition risk of loss are, in this court's view, grossly overstated.

In any event, a secured creditor's substantive rights are not prejudiced by continuance of the stay in a Chapter 7 case. Although a secured creditor may not repossess collateral absent an order terminating the stay under Code § 362(d), the stay (as it applies to property of the estate) terminates by operation of law upon the closing of the Chapter 7 case[2] or sooner if the property is affirmatively abandoned by the trustee. Nationally, the average time between the commencement of a Chapter 7 case and its closing (see Code § 350(a)) is 4.8 months.[3] During the pendency of the stay the secured creditor is entitled to receive proof of adequate insurance and timely payments required under the loan documents. Upon closing of the case or abandonment of the collateral the stay terminates and the secured creditor's substantive *in rem* rights remain intact. Therefore even where there has been no prejudice to the secured creditor shown, the stay will terminate, at the latest, on the average of 4.8 months later when the case is closed.[4] Thus, while the filing of a Chapter 7 petition may be an event of default under the prepetition loan documents, a "technical" default does not constitute "cause" under Code § 362(d)(1) warranting termination of the stay. In the instant case no other grounds exist justifying termination of the stay in view of the fact that Capital concedes that, as of the petition date, it enjoyed a ten percent equity cushion, that is, the value of the vehicle exceeded the debt to Capital secured thereby. *See In re Garsal Realty, Inc.,* 98 B.R. 140, 153 (Bankr.N.D.N.Y.1989). Accordingly, Capital's interest in the vehicle is adequately protected pursuant to Code § 362(d)(1).

Based upon the foregoing reasons, Capital's motion for relief from the stay is hereby **denied.**

**IT IS SO ORDERED.**

2. Code § 362(c)(1) provides that, absent order of the court, the stay applies to property of the estate until such property is "no longer property of the estate." Code § 554(c) provides that scheduled property is abandoned, that is, no longer property of the estate, upon the closing of a case.

3. See U.S. Bankruptcy Court case processing measures for calendar year 1994 as published by the Administrative Office of the United States Courts.

4. However the court is unaware of a single reported New York state court decision in which a secured creditor has successfully sought to replevin an automobile securing a debt based upon a debtor's prior bankruptcy filing as the sole and exclusive event of default under the prepetition loan documents.