FEINBERG, Circuit Judge:
This case presents an issue of first impression in this circuit: whether a bankruptcy court may allow a debtor, who files for bankruptcy and is “current” on a car-purchase loan, to retain the collateral securing the loan and continue making monthly payments under the original loan agreement. Creditor Capital Communications Federal Credit Union (Capital) moved in the United States Bankruptcy Court for the Northern District of New York for, among other things, relief from the automatic stay imposed by 11 U.S.C. § 362 when debtor Brian K. Boodrow filed for bankruptcy under Chapter 7 of the Bankruptcy Code. In December 1995, Bankruptcy Judge Littlefield, Jr. denied that motion. In re Brian Boodrow, 192 B.R. 57 (Bankr.N.D.N.Y.1995). In June 1996, the United States District Court for the Northern District of New York, Thomas J. McA-voy, C.J., affirmed the decision of the bankruptcy court. Capital Communications Federal Credit Union v. Boodrow (In re Boodrow), 197 B.R. 409 (N.D.N.Y.1996). Capital appeals from that ruling; for reasons stated below, we affirm.
I. Facts and Prior Proceedings
The matérial facts in this case are not in dispute. In May 1995, Boodrow filed for relief pursuant to Chapter 7. Prior to filing, Boodrow had borrowed $15,900 from Capital to purchase a 1992 Pontiac Grand’Am. As of the petition date, Boodrow "owed Capital $8,820, which sum was secured by a first priority hen on the vehicle. Capital agrees that the market value of the vehicle on that date was $9,650.
After filing his Chapter 7 petition, Boo-drow filed a statement of intention pursuant to 11 U.S.C. § 521(2),[1] indicating that he intended to retain the vehicle and reaffirm his debt to Capital. However, Boodrow, who had been receiving workmen’s compensation and disability payments for-an injury, discovered sometime thereafter that he was permanently disabled and would not be able to return to full-time employment. For this reason, Boodrow says, he did not execute a reaffirmation agreement with Capital but rather retained the car, remained “current” on his monthly installment payments and maintained adequate insurance on the car. Apparently, as part of the loan contract with Capital, Boodrow had purchased disability insurance, which was the source of the monthly payments due under the loan. In *193 deed, it is undisputed that at all times up to the argument of this case before us, Boodrow has remained current on his payments and maintained adequate insurance for the vehicle.
In July 1995, Capital moved to lift the automatic stay and for other relief on the ground that Boodrow had not complied with § 521(2), and that this failure constituted cause under 11 U.S.C. § 362(d)(1) for lifting the stay to enable Capital to recover the vehicle. Capital maintained that Boodrow was required under § 521(2) to either enter into a reaffirmation agreement, surrender the vehicle to Capital, or redeem it by immediately paying Capital the market value of the vehicle.
Bankruptcy Judge Littlefield conducted a hearing on Capital’s motion in August 1995 and reserved decision. See 192 B.R. at 58. In September, he granted Boodrow a discharge from bankruptcy. Thereafter in December, Judge Littlefield denied Capital’s motion for relief from the automatic stay. The court held that Capital had not demonstrated cause for lifting the stay because § 521(2) allowed a debtor in Boodrow’s position to retain the collateral and continue making monthly payments. 192 B.R. at 59. The court concluded that Capital had not demonstrated that it would suffer harm if the stay was not lifted. Id. at 60.
Capital appealed to the district court, and Chief Judge McAvoy affirmed the bankruptcy court in an opinion filed in June 1996. The judge held that § 521(2) allowed Boo-drow to retain the collateral and continue to perform under the original loan agreement, and therefore the bankruptcy court had properly denied Capital’s motion. This appeal followed.
II. Discussion
A. Mootness
We turn to the issue of mootness because our dissenting colleague takes the position that this case became moot when the bankruptcy court granted Boodrow a discharge from bankruptcy on September 5, 1995 — a few months before it issued its opinion denying Capital relief from the automatic stay. Neither party raised the issue of mootness at any stage of the case, but we asked for and received supplemental briefing on that issue. After reviewing those briefs, we agree with Boodrow, Capital and amicus curiae Key Bank of New York (Key Bank) that the case is not moot.[2]
It is clear that under Article III of the Constitution, we lack jurisdiction over a case “when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.” Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam) (internal quotations and citations omitted); South Street Seaport Ltd. Partnership v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 759 (2d Cir.1996). The Supreme Court has instructed that a case becomes moot only when it is “impossible for the court to grant ‘any effectual relief whatever’ to a prevailing party.” Church of Scientology of Cal. v. United States, 506 U.S. 9, 12, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992) (citing Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895)) (emphasis added); see also Fox v. Board of Trustees of the State Univ. of N.Y., 42 F.3d 135, 140 (2d Cir.1994) (case moot when “it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury”).
Judge Shadur argues in his dissent that the automatic stay, which protects a debtor’s assets during the administration of a bankruptcy case, see 11 U.S.C. § 362(a), terminated completely as a matter of law when Boo-drow received his discharge. With regard to Capital’s right to try to reclaim the vehicle, this seems questionable. The bankruptcy judge, who obviously knew that he had granted Boodrow a discharge three months earlier, noted in denying Capital’s motion that “the stay (as it applies to property of the estate) terminates by operation of law upon the closing of the Chapter 7 case or sooner if *194 the property is affirmatively abandoned by the trustee.” 192 B.R. at 60 (emphasis added). Indeed, 11 U.S.C. § 362(c)(1) states that “the stay of an act against property of the estate ... continues until such property is no longer property of the estate,” not merely until discharge. Id.; see Collier on Bankruptcy, ¶ 362.06 at 362-72 (Lawrence P. King ed., 15th ed. rev.1996) (property is no longer part of the estate if sold, abandoned, exempted, or a reorganization plan confirmed). Boodrow’s supplemental brief states that the trustee in this case did not “formally abandon any potential interest” in the vehicle. We have no information to indicate that Boodrow’s bankruptcy case is closed, despite his discharge. See Collier ¶ 350.01 at 350-2 (case is closed after the estate is fully administered and the trustee is discharged). It thus seems that Boodrow’s discharge did not completely terminate the stay.
In any event, even if the automatic stay did terminate completely with respect to Boodrow’s vehicle upon his discharge, it seems clear that Capital did not seek to lift the automatic stay as an end in itself. Rather, Capital essentially sought to recover Boo-drow’s vehicle or an equivalent sum. In its motion papers, Capital argued that the automatic stay should be lifted “to allow [it] to recover the vehicle” because Boodrow had not, pursuant to § 521(2), redeemed or surrendered the vehicle or entered into a reaffirmation agreement. Capital maintained that “[a]bsent a reaffirmation, the entire balance [outstanding on the loan] is due immediately. The Court by allowing continuation of monthly payments is forcing a quasi-reaffirmation upon the creditor.” Finally, Capital asked for “such other and further relief as the Court deems just and proper.” Capital filed the motion to prevent Boodrow from simply retaining the vehicle and continuing to make monthly payments. Indeed, Capital did and still does argue that § 521(2) prohibits such action barring reaffirmation of the loan.
By granting a discharge while Boodrow was still in possession of the car, the bankruptcy court in effect continued the harm of which Capital had already complained. At present, Boodrow retains possession of the vehicle and is making monthly'payments to Capital, the very injury that Capital attempted to redress in its motion. See New England Health Care Employees Union v. Mount Sinai Hosp., 65 F.3d 1024, 1029 (2d Cir.1995) (challenge to repealed legislation not moot because “collateral” injury suffered while legislation was in effect could be redressed); Michel v. Federated Dep’t Stores, Inc. (In re Federated Dep’t Stores, Inc.), 44 F.3d 1310, 1316 (6th Cir.1995) (case not moot when “collateral consequences” of court order create a live dispute).
We believe that we could grant Capital effective relief if we agreed with its interpretation of § 521(2). On that assumption, Boo-drow was — and still is — violating that section because he has never signed a reaffirmation agreement or redeemed or surrendered the vehicle. If we reversed the lower courts, we could remand to' the bankruptcy court with orders to either compel Boodrow to make an appropriate election under § 521(2) or perhaps amend his. discharge. Capital could then receive practical relief in the form of either an immediate payment representing the total outstanding amount on the loan, return of the vehicle or a new arrangement restoring Boodrow’s personal liability if he were to default on the loan. This is the essential relief Capital sought when it made its motion in the bankruptcy court. See In re Burger Boys, 94 F.3d at 760 (case not moot when court can provide practical relief sought by injured party). We thus conclude that the case is not moot and turn to the merits of the appeal.
B. The Merits
A bankruptcy court has discretion in determining whether to lift the automatic stay. Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907. F.2d 1280, 1286 (2d Cir.1990). We thus review the bankruptcy court’s denial of Capital’s motion for abuse of discretion. See id. We review de novo the question of the proper interpretation of § 521(2). See General Motors Acceptance Corp. v. Valenti (In re Valenti), 105 F.3d 55, 59 (2d Cir.1997).
*195 Capital argues that “cause” existed pursuant to 11 U.S.C. § 362(d)(1)[3] for lifting the automatic stay. We have described the automatic stay as a “crucial provision of bankruptcy law” intended to “prevent[ ] disparate actions against debtors ... [and] ensurfe] that no creditor receives more than an equitable share of the bankrupt’s estate.” Lincoln Savings Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Assoc., Inc.), 880 F.2d 1540, 1545 (2d Cir.1989) (internal citations omitted). Although a bankruptcy court has discretion to lift the stay in various situations, the “most common basis for granting relief for cause,” and the one most applicable here, is a lack of adequate protection of a party’s interest in property. Collier, ¶ 362.07[3][a] at 362-77 to 362-78. We have emphasized that a bankruptcy court should deny relief from the stay if the movant “fails to make an initial showing of cause.” In re Sonnax Indus., Inc., 907 F.2d at 1285.
Capital argues primarily that it did show cause to lift the stay because Boodrow violated § 521(2) by not electing to reaffirm the debt or surrender or redeem[4] the vehicle. In other words, Boodrow could not simply retain the vehicle and continue to make monthly payments. Courts in several circuits have taken the position that § 521(2) confines a debtor to the options specifically listed in that section. E.g, In re Edwards, 901 F.2d 1383, 1387 (7th Cir.1990); Taylor v. AGE Federal Credit Union (In re Taylor), 3 F.3d 1512, 1517 (11th Cir.1993); Johnson v. Sun Finance Co. (In re Johnson), 89 F.3d 249, 252 (5th Cir.1996); cf. General Motors Acceptance Corp. v. Bell (In re Bell), 700 F.2d 1053, 1058 (6th Cir.1983) (case decided before § 521(2) added to Code).
Boodrow responds that no cause existed to modify the stay because he complied with § 521(2) by indicating to Capital that he would retain the vehicle and continue making payments due under the loan agreement. Courts in other circuits have held that, consistent with § 521(2), a debtor who is current on a loan may follow this course of action. E.g., Home Owners Funding Corp. v. Belanger (In re Belanger), 962 F.2d 345, 348-49 (4th Cir.1992); Lowry Federal Credit Union v. West, 882 F.2d 1543, 1547 (10th Cir.1989); Sears Roebuck & Co. v. Lamirande, 199 B.R. 221, 224 (D.Mass.1996); In re Hunter, 121 B.R. 609, 617 (Bankr.N.D.Ala.1990); In re Crouch, 104 B.R. 770, 772-73 (Bankr.S.D.W.Va.1989). Boodrow also argues that Capital alleged no affirmative harm justifying the lifting of the stay.
It is not clear to us that violation of § 521(2) would automatically require a bankruptcy court to lift the automatic stay. See Lowry, 882 F.2d at 1546 (holding that debt- or’s failure to comply with § 521(2) did not warrant such relief). However, even assuming that such violation constitutes cause for lifting the stay, we find, for reasons discussed below, that Capital has not shown that Boodrow violated § 521(2).
(1) Text of Section 521(2)
Section 521(2), reproduced in note 1 above, was added to the Bankruptcy Code by the Bankruptcy Amendment and Federal Judgeship Act of 1984 and states in relevant part that
the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property.
11 U.S.C. § 521(2)(A) (emphasis added). As Capital points out, surrender requires a debt- or to return the collateral to the creditor. Redemption is governed by 11 U.S.C. § 722, reproduced in the margin.[5] That section al *196 lows a debtor to retain the collateral by paying the creditor the value of the property. Most courts require a debtor to pay the creditor in one “lump sum” payment rather than in installments, unless the creditor agrees otherwise. Collier, ¶ 722.05[2] at 722-11 to 722-12. Alternatively, a debtor can reaffirm a debt by entering into a new loan agreement with the creditor, a legal obligation that survives the debtor’s discharge from bankruptcy. See 11 U.S.C. § 524(c). Capital observes, however, that in a reaffirmation agreement the parties can negotiate new terms to supplant those in the original loan agreement, and that the creditor’s acceptance of the agreement must be voluntary.
It is clear that the “starting point in every ease involving construction of a statute is the language itself. But the text is only the starting point,” Kelly v. Robinson, 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986) (internal citations omitted), especially when the language is ambiguous. The Supreme Court has thus explained in interpreting other sections of the Bankruptcy Code that “we must not be guided by a single sentence or [part] of a sentence, but look to the provisions of the whole law, and to its object and policy.” Id. (internal quotes and citations omitted); Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072-73 (2d Cir.1993) (when statute is ambiguous, “other tools of interpretation beyond a plain reading” may be utilized). With these principles in mind, we first turn to the text of § 521(2).
The bankruptcy and district courts in this case both held that the language of § 521(2)(A), quoted above, did not prevent the bankruptcy court from allowing Boodrow to retain the collateral and continue to perform under the loan agreement. (This course of action has been described as “reinstatement,” [6] a term we use at times hereafter in this opinion.) 192 B.R. at 59, 197 B.R. at 411-12. Both courts relied on In re Be-langer, where the Fourth Circuit explained that
[t]he fact that the statutory options are stated in the disjunctive shows that the words “if applicable” are unnecessary under a construction of the statute that makes the options exclusive. But if the phrase “if applicable” is given effect, it plays an important role____ [T]he debtor must specify a choice of the options if applicable. But if these options are not applicable, the debtor need not specify them.
962 F.2d at 348 (internal citations omitted); see also Sears Roebuck & Co. v. Lamirande, 199 B.R. at 224; In re Hunter, 121 B.R. 609, 617 (adopting same reading of “plain language” of § 521(2)(A)); In re Crouch, 104 B.R. at 772 (same). The Belanger court noted that its reading of the statute complied with the “canon that courts should give effect, if possible, to every word in a statute.” Belanger, 962 F.2d at 348 (citing Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979)).
In support of this interpretation, Collier states that “[n]othing in section 521(2) requires the debtor to choose redemption, reaffirmation or surrender of the property to the exclusion of all other alternatives. Section 521(2) merely requires a statement of whether the debtor intends to choose any of those options, if applicable.” Collier, ¶ 521.10, at *197 521-34 to 521-35 (footnote omitted). One court has held that the options listed in § 521(2) were not exclusive and explained that in Chapter 7 bankruptcies the trustee often sells encumbered property, using the proceeds to settle creditors’ claims. In re Parker, 142 B.R. 327, 330 (Bankr.W.D.Ark.1992). The court noted that “[i]n this common scenario, none of the three so-called mandatory alternatives listed in [§ 521(2)(A) ] have occurred.” Id.
Capital counters that the plain language of § 521(2)(A) shows that Congress intended the options set forth to be the only ones available to a debtor. Capital relies on the reasoning of In re Taylor, where the Seventh Circuit explained the meaning of the phrase “if applicable” as follows:
[I]t is clear when the options of redemption and reaffirmation would not be applicable. This language does not apply to a debtor’s surrender of the property; it therefore must apply to a debtor’s retention of property. If a debtor retains secured property, then the options of redemption and reaffirmation are applicable and the debtor is required to redeem or reaffirm.
In re Taylor, 3 F.3d at 1516. Capital argues-that § 521(2)(A) would be confusing without “if applicable” because it would require a debtor who decides to surrender the collateral to indicate an intention to reaffirm or redeem, two choices that do not logically apply if the debtor is giving back the collateral.[7]
Both parties assert that their interpretation of § 521(2)(A) better comports with other subsections of § 521(2). Capital maintains that reinstatement cannot be reconciled with § 521(2)(B), which states in relevant part that “within forty-five days after the filing of a notice of intent ... the debtor shall perform his intention with respect to such property.” Admittedly, retaining the collateral and continuing to make scheduled payments is not action that typically can be performed within 45 days. See In re Taylor, 3 F.3d at 1516; cf. In re Edwards, 901 F.2d at 1386. Capital also insists that the options listed in § 521(2)(A) must be exclusive because nowhere else does the Code provide for additional options.
Boodrow argues, on the other hand, that his interpretation of § 521(2)(A) is reinforced by § 521(2)(C), which states that “nothing in subparagraphs (A) and (B) of this paragraph shall alter the débtor’s or the trustee’s rights with regard to such property under this title.” The district court here agreed, 197 B.R. at 412, relying on In re Belanger, where the Fourth Circuit noted that, before the enactment of § 521(2), one bankruptcy court had held that a debtor who was not in default on a loan was entitled to retain the collateral securing the loan as long as he remained current on the loan payments. In re Belanger, 962 F.2d at 347 (citing In re Ballance, 33 B.R. 89 (Bankr.E.D.Va.1983)).
Although § 521(2)(A) clearly imposes a mandatory obligation on a debtor to state whether he intends to retain or surrender collateral, we find the .section to be ambiguous as to whether Congress intended the options there listed to be exclusive, and we believe that the “plain” language arguably supports either of the interpretations described above. We thus turn to other sources for evidence of congressional intent as to the meaning of § 521(2).
(2) Legislative History and Policy
The bankruptcy court in this case concluded that review of the legislative history of § 521(2) did “not assist resolution of this matter,” noting that no Senate or House report became part of the record regarding § 521(2). 192 B.R. at 59. Nevertheless, the district court found that the “limited legisla *198 tive history points to the general conclusion that Section 521(2) is meant to be a notice provision.” 197 B.R. at 412. Judge Small, the bankruptcy judge in In re Belanger, came to the same conclusion based on detailed statements made at a congressional subcommittee hearing by “a coalition of bankers, credit unions, finance companies, oil companies and retailers.” In re Belanger, 118 B.R. at 370. Those statements indicate that § 521(2)(A) was intended specifically to eliminate the problem that secured creditors could not determine what a debtor who had filed for bankruptcy was going to do with collateral securing a debt. Id. at 370-71 & n. 5. Instead of the creditor having to spend time and money obtaining this information through judicial proceedings, § 521(2) placed on a debtor “the responsibility of giving creditors information ... as to what they intend to do with the collateral.” Id. at 370 n. 5.
We agree that § 521(2) appears to serve primarily a notice function, not necessarily to restrict the substantive options available to a debtor who wishes to retain collateral securing a debt. With respect to Capital’s argument that the time limit in § 521(2)(B) precludes such a conclusion, the district court here reasoned that “[ojbviously, under such a scheme it is appropriate to set a time limit for action upon such a statement, but that limit does not necessarily change the nature of the section” as one aimed at providing notice to creditors of a debtor’s intentions. 197 B.R. at 412. We note also that a bankruptcy court has discretion under § 521(2)(B) to give a debtor “additional time ... for cause” beyond the 45-day deadline to perform a stated intention.
Moreover, we believe that the interpretation advocated by Boodrow and adopted by the courts below better comports with the policies behind the Bankruptcy Code. The bankruptcy court viewed Boodrow’s interpretation of § 521(2) as “most consistent with balancing the ‘fresh start’ policy underlying the Code and the rights of the ... secured creditor[s].” 192 B.R. at 59. The policy embodied in the Code that a debtor discharged from bankruptcy should receive a “fresh start” has been emphasized time and again by the Supreme Court and this court. E.g., Local Loan Co. v. Hunt, 292 U.S. 234, 244-45, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); Lines v. Frederick, 400 U.S. 18, 19, 91 S.Ct. 113, 113-14, 27 L.Ed.2d 124 (1970) (per curiam); State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1310 (2d Cir.1996); Green v. Welsh, 956 F.2d 30, 33 (2d Cir.1992).
Confining an individual Chapter 7 debtor to the choices of surrender, redemption or reaffirmation can severely interfere with providing the debtor a fresh start. As Judge Butzner explained in In re Belanger, a debt- or is “unlikely to be able to redeem the collateral in a lump sum as required by § 722,” and “reaffirmation requires the consent of the creditor in order to comply with § 524(c).” 962 F.2d at 348. Thus, if the options listed in § 521(2) were exclusive, a debtor’s only real choices would be either to reaffirm the debt under whatever new terms the creditor requires or to surrender the property. Because reaffirmation involves negotiation between parties with unequal bargaining power and requires voluntary agreement by both debtor and creditor, it gives a creditor an effective veto on the “fresh start.” Yet, surrender may deprive a debtor of much needed property, such as disabled debtor Boodrow’s vehicle in this case.
Capital responds that a creditor faces the possibility of “substantial financial danger” and “very real loss” when a bankruptcy court allows a debtor to retain property without redeeming or reaffirming. Capital explains that because bankruptcy discharges a debtor from personal liability on outstanding loans, Capital’s only remedy if Boodrow defaulted on the loan after discharge would be to commence legal action to recover the vehicle. Capital would not then be entitled to recover the difference, if any, between the outstand--ing balance on the loan and the value of the vehicle. Further, Capital argues that a debt- or whose personal liability is discharged through bankruptcy has no incentive to maintain the collateral in good condition or to continue making payments if the value of the collateral drops below the amount outstanding on the loan. See In re Edwards, 901 F.2d at 1386. Finally, Capital contends that Boodrow’s interpretation of § 521(2) would in *199 effect negate reaffirmation because no debtor would reaffirm personal liability rather than simply continue to make payments on the loan and retain the collateral. See id. at 1386; In re Taylor, 3 F.3d at 1515-16. Capital asserts, as the court stated in In re Taylor, that this additional option gives the debtor “not a ‘fresh start’ but a ‘head start.’ ” Id. at 1516.
It is true that a debtor’s discharge from bankruptcy eliminates personal liability on the loan, thereby theoretically limiting the amount a creditor could recover if the debtor defaults. However, we disagree with Capital’s assumption that a creditor will necessarily or even probably suffer financial injury when a debtor who is current on a loan retains the collateral and continues to make the payments required under the loan agreement. As the court in In re Crouch observed, because a creditor can recover the collateral from a discharged debtor who defaults on a loan, the creditor’s main concern should be that, upon default, the value of the collateral exceeds the amount outstanding on the loan. In re Crouch, 104 B.R. at 773 (citation omitted). The bankruptcy court here characterized Capital’s suggestion that Boodrow would not have any incentive to maintain the collateral as “uninformed with regard to the realities of the typical Chapter 7 case.” 192 B.R. at 59. Boodrow argues that “there is a great incentive for [him] to maintain current on the débt and to preserve the auto since he has no means to acquire another auto.” Indeed, the bankruptcy court explained that a
debtor’s ability to obtain credit on the same (or comparable) terms as nondebtors, is generally impaired by filing bankruptcy. If a debtor fails to maintain or permits a waste of collateral, such as an automobile, he is therefore less able than a nondebtor to obtain financing required to replace the collateral. As a result, debtors are generally likely to have a greater incentive than nondebtors to stay current on payments and to maintain the value of the collateral.
Id.
In any event, other courts have noted that a debtor’s failure, after discharge, to insure or maintain collateral typically permits a creditor to
accelerate the indebtedness and repossess the collateral. In fact default clauses which permit the lender to declare a default in the event that the creditor deems its security interest insecure are specifically authorized by the Uniform Commercial Code and may be exercised by a secured lender if it has a good faith belief that the prospect for payment is impaired.
In re Belanger, 118 B.R. at 372; In re Parker, 142 B.R. at 330. We thus disagree that a creditor invariably, or even probably, will lose the benefit of its bargain under the original loan agreement when a bankruptcy court permits reinstatement.
With regard to Capital’s contention that Boodrow’s interpretation of § 521(2) reads reaffirmation out of the statute, amicus NACBA points out that sometimes a debtor has an incentive to reaffirm a debt. The NACBA brief explains that a debtor may seek to reaffirm in order to reestablish credit standing after a bankruptcy discharge or, if the debtor was not current on the loan when the bankruptcy petition was filed, to obtain a new agreement that would provide for the right to cure the arrearage and avoid default. The brief also notes that sometimes a debtor may want to reaffirm in order to retain the benefit of certain consumer protection provisions contained in the original loan agreement. They thus challenge Capital’s assumption that no debtor would choose reaffirmation.
In any event, Capital’s argument misapprehends the scope of the holding that we review in this case. The district court explained that a bankruptcy court must exercise its discretion in determining whether a debtor may retain collateral and keep making payments by considering the debtor’s “previous payment record, a comparison of the value of the collateral and the amount of debt, and other relevant facts.” 197 B.R. at 412; see Lowry, 882 F.2d at 1547 (holding that bankruptcy court has such discretion only when “evidence indicates neither the debtor nor the creditor would be prejudiced”). Thus, a debtor in default on a loan at the time of the bankruptcy petition or *200 whose behavior indicates that he will not be able to continue making scheduled payments might well suffer a lifting of the stay. In fact, Judge Littlefield — the bankruptcy judge in this case — recently granted summary judgment to a creditor because a debtor not current on his loan obligation had not reaffirmed the loan or redeemed or surrendered the collateral. Beneficial N.Y., Inc. v. Bushey (In re Bushey), 204 B.R. 661, 663-64 (Bankr.N.D.N.Y.1997).
After considering the text of § 521(2), its legislative history and the policies informing the Bankruptcy Code, we hold that § 521(2) does not prevent a bankruptcy court from allowing a debtor who is current on loan obligations to retain the collateral and keep making payments under the original loan agreement.[8]
(3) Exercise of Discretion
We turn now to whether the bankruptcy court abused its discretion in refusing to grant Capital the relief it sought. We agree with both courts below that Capital had the burden of showing that “continuation of the stay [would] cause some affirmative harm” to its interest in the vehicle. 197 B.R. at 413. As noted above, Boodrow was current on his loan payments when the bankruptcy petition was filed. We have no information to indicate that Boodrow has, at any time since then, failed to make required payments. We agree with the district court that because Boodrow’s disability insurance was making the monthly loan payments, there was little chance that Boodrow would default.
Moreover, in determining whether a creditor’s interest in a debtor’s property is adequately protected, “most courts engage in an analysis of the property’s ‘equity cushion.’ ” Nantucket Investors II v. California Federal Bank (In re Indian Palms Assocs., Ltd.), 61 F.3d 197, 207 (3d Cir.1995); Collier, ¶ 362.07[3][d] at 362-88 (adequate protection when the “value of the collateral available to the creditor exceeds by a comfortable margin the amount of the creditor’s claim”). Capital conceded in the district court that the value of the vehicle exceeded the amount outstanding on the loan by 10 percent. 197 B.R. at 413. Thus, even if Boodrow had defaulted on the loan, Capital could have recovered the full amount to which it was entitled under the original loan agreement. At no time has Capital alleged any particularized harm — including the failure to receive any payment due under the loan agreement — flowing from the bankruptcy court’s denial of the relief it sought. We thus hold that the bankruptcy court did not abuse its discretion in denying Capital’s motion.
Affirmed.

. Section 521(2) provides, in relevant part, that:
(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—
(A)within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier ..., the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
(B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and
(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor’s or the trustee's rights with regard to such property under this title.

. Amicus curiae National Association of Consumer Bankruptcy Attorneys (NACBA) took no position on mootness in its supplemental brief.

.That section provides, in relevant part, that
[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ... (1) for cause, including the lack of adequate protection of an interest in property of such party in interest....

. Section 521(2)(A) also states that a debtor can "specify[] that such property is claimed as exempt,” but in response to Capital’s motion Boo-drow made no claim of exemption.

. Section 722 provides, in relevant part, that
[a]n individual debtor may ... redeem tangible personal property intended primarily for per *196 sonal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

. Professor Joann Henderson describes reinstatement as
the debtor's right to retain the collateral by continuing regular payments under the security agreement and thereby completing the contract, albeit a somewhat different contract because any personal obligation has been discharged. To qualify for reinstatement, debtors cannot be in default, except for technical defaults such as bankruptcy clause defaults, and must pay the entire debt in accordance with the contract. This right is called reinstatement because it prevents foreclosure and reinstates the contract. Reinstatement allows debtors to continue with business as if bankruptcy had no effect on the secured creditor's position.
Joann Henderson, The Gaglia-Lowry Brief: A Quantum Leap from Strip Down to Chapter 7, 8 Bankr.Dev. J. 131, 137 (1991).

. The Tenth Circuit has taken the position that a bankruptcy court may allow reinstatement despite the court's belief that the "plain English of the section” required the debtor to select one of the options listed. Lowry, 882 F.2d at 1545 n. 2 (deeming the phrase "if applicable” to be “gratuitous”). The court held that the debtor’s "failure to comply fully with § 521(2)” did not warrant relief from the automatic stay so that the creditor could repossess the collateral. Id. at 1546. As will be seen below, although we agree with the outcome in Lowry we disagree with its view that the language of § 521(2)(A) plainly restricts a debtor to redemption, surrender or reaffirmation.

. Capital also argues that specific authority for reinstatement cannot be found in the Code. However, the authority for the automatic stay upon the filing of a bankruptcy petition is clear. See § 362(a). As discussed above, that stay can ordinarily be lifted only on a showing of cause.