**In re Gary L. GAINES, Evelyn Gaines, Debtors.**

**Bankruptcy No. 99–63110.**

United States Bankruptcy Court, N.D. New York.

Nov. 19, 1999.

Getnick, Livingston, Atkinson, Gigliotti & Priore, LLP, Utica, New York, Nicholas S. Priore, of counsel, for The Savings Bank of Utica.

Scholl & Hamlin, P.C., Utica, New York, Leon J. De Bernardis, of counsel, for debtors.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently before the Court is a motion filed on July 13, 1999, by the Savings Bank of Utica ("SBU") seeking relief from the automatic stay pursuant to § 362(d) of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code") with regard to the real property of Gary and Evelyn Gaines ("Debtors") situated at 1609 Sherman Drive, Utica, New York (the "Property"). SBU seeks relief from the automatic stay for the purpose of foreclosing its mortgage on the Property. SBU also requests that the Court require the Chapter 7 Trustee to abandon his interest in the Property. Opposition to SBU's motion was filed on July 20, 1999, by the Debtors.

The motion was heard on July 27, 1999, at the Court's regular motion term in Utica, New York. At the conclusion of the oral argument, the Court requested that memoranda of law be filed no later than August 27, 1999. Thereafter, the Court advised the parties by letter that it had scheduled an evidentiary hearing ("Evidentiary Hearing") for October 21, 1999, to resolve essential factual issues upon which there was no agreement. Following the Evidentiary Hearing, the Court took SBU's motion under advisement solely on the Code § 362(d)(1) issue.[1]

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), 157(b)(2)(A), (G), and (O).

## FINDINGS OF FACT

On or about November 30, 1992, the Debtors executed a note ("Note") and mortgage (the "Mortgage") to secure a loan from SBU to be used in purchasing the Property. See Stipulation of Facts, sworn to on October 18, 1999 by the Debtors and a representative of SBU, as well as their counsel, at ¶¶ 2–3. The principal amount of the Note secured by the Mortgage was $200,000, to be paid over thirty years at a variable interest rate which was to be reevaluated every four years. See Stipulation of Facts at Exhibit A.

At the time of applying for the Mortgage, Debtor Gary Gaines was a licensed practicing physician whose gross income was approximately $15,250 per month. See Stipulation of Facts at ¶ 12. On June 4, 1999, the Debtors filed a voluntary petition ("Petition") seeking protection under chapter 7 of the Code. At some point prior to filing the Petition, Debtor Gary Gaines surrendered his license to practice medicine and began receiving disability payments of approximately $2,020 per month. See id. at ¶ 13. Currently, Debtor Evelyn Gaines, is earning a gross monthly income of $4,808.66. Id. at ¶ 14. Debtors' combined monthly expenses, including the Mortgage payment, total $6,812. Id. at ¶ 11. Thus, at present, Debtors' combined monthly income totals approximately $6,828.66 which, after deducting their

---

1. Originally, SBU had requested relief from the automatic stay pursuant to Code §§ 362(d)(1) and (2). However, at the Evi- dentiary Hearing counsel for SBU withdrew his request for relief pursuant to Code § 362(d)(2).

monthly expenses leaves a surplus of $16.66.

Debtors have refused to reaffirm the Mortgage with SBU since filing their Petition. From the inception of the Mortgage until the date of filing their Petition, Debtors' payment history was erratic in that payments were made anywhere from 3 days to 136 days late.[2] *See* SBU Exhibit 7. On June 3, 1999, one day prior to filing their Petition, the Debtors submitted a single payment to SBU amounting to the equivalent of three months of Mortgage payments. *Id.* According to the testimony of Maureen Conlon ("Conlon"), a Loan Collections Officer at SBU, these payments brought the mortgage current as of that date. Conlon testified that on July 1, 1999, Debtors again defaulted on their obligation to SBU by making a payment of $1,000 of the required $2,457.29 due on July 1, 1999, on or about July 8, 1999, and remitting the balance due of $1,457.29 on or about July 15, 1999.[3]

On June 24, 1999, an appraisal of the Property was prepared by LT Appraisal Service for SBU. This appraisal estimates the fair market value of the Property as of June 21, 1999, to be $210,000 with a distressed sale value of $175,000. *See* Stipulation of Facts at ¶ 5 and Exhibit D. William Weimer of SBU's Collection Department agreed with the estimate of fair market value but opined that the distressed value of the Property was likely to be between $150,000 and $160,000. *Id.*

Both Debtors and SBU agree there is no equity in the Property, even accepting the fair market value of the Property at $210,-000. *Id.* at ¶ 7. In addition to the Mortgage, which as of October 20, 1999, secured an obligation to SBU in the sum of $187,284.12, various junior liens have also been filed against the Property arising out of obligations of one or both of the Debtors, totaling approximately $219,565.27. *See* Stipulation of Facts at ¶ 6.

## ARGUMENTS

As a result of the postpetition default, SBU argues that pursuant to Code § 362(d)(1), it has shown cause for the Court to lift the automatic stay. In addition, SBU contends it has cause to lift the automatic stay because the Debtors' refusal to reaffirm the Mortgage is prejudicial to SBU. SBU asserts that this refusal, given Debtors' late and erratic payment history and other factors considered by the Court of Appeals for the Second Circuit in *Capital Communications Federal Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43 (2d Cir.1997), should qualify as cause to lift the automatic stay.

In response to SBU's arguments, Debtors assert that the current market value of Debtors' Property of approximately $210,-000 provides sufficient adequate protection for the SBU mortgage in that there exists an equity cushion of approximately $23,-000.[4] Moreover, based on *Boodrow*, counsel for Debtors asserts that it is neither necessary nor in the best interest of the Debtors to reaffirm the mortgage obligation to SBU.

## DISCUSSION

Upon the filing of a bankruptcy petition, Code § 362(a) provides for an automatic

---

2. Approximately 10 of those payments were over 50 days late.

3. At the Evidentiary Hearing, Conlon contended that the partial payment made by Debtors on or about July 8, 1999, constituted a default. Paragraph 7(b) of the Note provides that the Debtors' failure to pay the "full amount of each monthly payment on the date it is due" constitutes a default. *See* Exhibit A of the Stipulation of Facts.

4. An equity cushion has been defined as " 'the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during [the] time the automatic stay remains in effect.' " *In re New Era Co.*, 125 B.R. 725, 728–29 (S.D.N.Y.1991) (quoting *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 n. 2 (9th Cir.1984)). In this case, assuming a value of $210,000, SBU has an equity cushion of approximately $23,000 over and above its claim of $187,284.12.

stay against any attempts to enforce or collect any prepetition debt. *See* Code § 362(a). However, the automatic stay may be terminated, annulled, modified or conditioned by the Court upon motion of a creditor filed pursuant to Code § 362(d).

In the context of this contested matter, Code § 362(d) provides two bases for a court to award relief from the automatic stay.[5] The first basis is "for cause." *See* Code § 362(d)(1). The court may also award relief from the automatic stay if a debtor does not have any equity in the property and the property is not necessary for an effective reorganization. *See* Code § 362(d)(2). In this case, the Court is only concerned with the first.

■■■ Code § 362(d)(1) requires that the secured creditor show that it holds a secured claim and it has a "factual and legal right to the relief that it seeks." *Id.* (citations omitted). Generally, courts have held that the creditor has the burden of showing that "continuation of the stay [would] cause some affirmative harm to its interest in the [property]." *Boodrow*, 126 F.3d at 53. After the secured creditor has established the existence of a secured claim and its right to the relief, the burden shifts to the debtor to go forward with its proof that will refute the existence of cause. *See Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr.S.D.N.Y.1994). Failure of the debtor to meet this burden is grounds for modifying or vacating the automatic stay pursuant to Code § 362(d)(1).

■■■ SBU contends that it has satisfied its burden of establishing a "factual and

legal right to the relief it seeks" pursuant to Code § 362(d)(1). It directs the Court to the fact that the Debtors have elected not to reaffirm the debt, surrender the Property to SBU, or redeem it in violation of Code § 521(2).[6] In addition to the alleged violation of Code § 521(2), SBU argues that the Debtors' erratic payment history over the life of the Mortgage and the fact that their monthly income exceeds their monthly expenses by only $16.66, increases the risk that their erratic payment history will continue and that the remaining equity cushion in the Property will be consumed by late charges and accruing interest. Thus, SBU contends, the violation of Code § 521(2), in conjunction with the increased risk of the Debtors' falling behind on their payments, constitutes "cause" pursuant to Code § 362(d)(1).

With respect to SBU's argument that the Debtors' violation of Code § 521(2) is "cause" to lift the automatic stay, this Court previously held that Code § 521(2) includes an implied fourth option in the context of a loan secured by a debtor's motor vehicle, in addition to the expressed options of reaffirmation, redemption, and surrender. *See In re Boodrow*, 192 B.R. 57, 59 (Bankr.N.D.N.Y.1995) (Hon. Robert E. Littlefield, Jr.), *aff'd sub nom. Capital Communications Federal Credit Union v. Boodrow*, 197 B.R. 409 (N.D.N.Y.1996) (Hon. Thomas J. McAvoy), *aff'd*, 126 F.3d 43 (2d Cir.1997), *cert. denied*, 522 U.S. 1117, 118 S.Ct. 1055, 140 L.Ed.2d 118 (1998).[7] Judge Littlefield concluded that

---

**5.** Code § 362(d)(3) provides a third ground which applies only in the case of a so-called "single asset real estate" debtor.

**6.** Code § 521(2), provides in relevant part:

the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property.

**7.** Although the conclusion reached by the Court in *Boodrow* applied to a loan secured by a motor vehicle, other courts within the Second Circuit have extended the same rationale to a loan secured by a real property mortgage. *See, e.g., In re Suarez*, No. 96–33464 (Bankr.D.Conn. Feb. 28, 1997), *aff'd sub nom. Suarez v. BankBoston*, No. 3:97–CV–00853 (CFD) (D.Conn. June 2, 1998), *aff'd* 198 F.3d 234, 1999 WL 753381 (2d Cir.1999); *see also In re Carpinella*, 201 B.R. 34 (Bankr. D.Conn.1996) (denying Bank of Boston Connecticut's motion to compel the debtor to avail himself of one of the three options listed

this implied option allows a debtor who is current on his/her payments at the time of filing to retain the collateral without signing a reaffirmation agreement. Accordingly, the Court denied the creditor's motion for relief from the automatic stay. *See Boodrow*, 192 B.R. at 58. In affirming this Court, Judge McAvoy found that allowance of the fourth option is one of judicial discretion and should be based upon the following factors: "[1] the debtor's previous payment history; [2] a comparison of the value of the collateral and the amount of the debt; and [3] other relevant factors." *See Boodrow*, 197 B.R. at 412 (citing *Lowry Fed. Credit Union v. West*, 882 F.2d 1543, 1547 (10th Cir.1989)).

In *Boodrow*, the debtor filed for relief under chapter 7 of the Code. One of his secured creditors was Capital Communications Federal Credit Union ("Capital"), who held a lien on the debtor's 1992 Pontiac Grand Am, in the amount of $8,820. *See Boodrow*, 126 F.3d at 45. The parties stipulated that the market value of the vehicle was $9,650. *Id.* After filing his petition, Boodrow filed a statement of intention pursuant to Code § 521(2), indicating that he intended to retain the vehicle and reaffirm the debt with Capital. At the time that the debtor filed his statement of intention, he had been receiving workmen's compensation and disability payments for an injury. *Id.* Sometime thereafter, he discovered that he was permanently disabled and would not be able to return to full time employment. *Id.* at 46. As a result, the debtor decided not to sign the reaffirmation agreement; however, he retained the vehicle, remained "current" on his installment payments and maintained adequate insurance on the vehicle. *Id.*

As part of the initial loan agreement, Boodrow had purchased credit disability insurance. *Id.* at 45. This insurance provided that if he became disabled, the insurance company would make timely payments on the loan. Once it was determined that Boodrow was disabled, the insurance company commenced making payments on the vehicle prepetition and continued postpetition. *Id.* As in the instant case, Capital moved for relief from the automatic stay for cause pursuant to Code § 362(d)(1). Capital argued that pursuant to Code § 521(2), there was a requirement that the debtor either reaffirm the debt, surrender the vehicle to Capital, or redeem it. *Id.* at 46.

The facts in *Boodrow* are easily distinguishable from the matter now under consideration. In *Boodrow* it was clear that Capital had no increased risk as a result of the debtor's failure to reaffirm the original agreement because the insurance company was obligated to continue making timely payments to Capital until the debt was satisfied. Capital was inevitably going to be paid in full satisfaction under the terms of the original contract by the insurance company.

In contrast to the facts in *Boodrow*, there is no guaranty of payment to SBU in this case. The payment history of the Debtors' herein has been erratic during the life of the loan. *See* Stipulated Facts at ¶ 10. This payment record, coupled with the fact that Debtors' monthly expenses total $6,812, while their combined monthly income totals only $6,828.66, convinces the Court that there is a very real possibility that the Debtors will continue their erratic payments into the future.[8] Further support for this view is evidenced by the Debtors' failure to make the full and timely monthly payment postpetition on July 1, 1999. If this payment pattern continues, accruing interest, late charges, fees and costs will continue to erode SBU's equity cushion of, at most, $23,000. As a

under Code § 521(2)(A) with respect to an Equity Credit Line Open–End Mortgage).

**8.** Although the Debtor Evelyn Gaines testified that she believed her husband's medical li-

cense would be restored, the Court has no actual proof of restoration or when it might occur.

result, an already tenuous equity cushion will be in danger of declining to the point of possible elimination. Thus, the Court finds that cause exists pursuant to Code § 362(d)(1). The Debtors' failure to comply with the expressed provisions of Code § 521(2) from SBU's standpoint involuntarily converts the Mortgage from a recourse to a non-recourse obligation and does so in the face of the increased risk that Debtors will be unable to maintain timely mortgage payments. Debtors have supplied no evidence to counter SBU's assertions. Therefore, the Court concludes that SBU has met its burden pursuant to Code § 362(g), and the Court will grant SBU's motion for relief from the automatic stay.

Based on the foregoing, it is hereby

ORDERED that SBU's motion for relief from the automatic stay pursuant to Code § 362(d)(1) is granted; it is further

ORDERED that the automatic stay will be vacated thirty (30) days from the date of this Order to enable the Debtors to consider their legal alternatives, and it is finally

ORDERED that SBU's motion to compel the Chapter 7 Trustee to abandon his interest in the Property is granted; however, said abandonment will also be effective thirty (30) days from the date of this Order.[9]

---

9. The Trustee did not oppose this portion of the motion.